IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

KEVONGH J. GRANT )
)
    Plaintiff, ) **Case. No. 1:19-CV-0025**
v. )
)
APTIM ENVIRONMENTAL AND )
INFRASTRUCTURE, INC., WITT O'BRIEN'S, LLC, )
ODEBRECHT CONSTRUCTION, INC., NATHAN )
McCANN, ANDRES McCANN, JOHN DOES, JANE )
DOES AND UNKNOWN CORPORATIONS )
)
    Defendants. )

# EXHIBIT 4

## APTIM ENVIRONMENTAL & INFRASTRUCTURE, INC.
## WORK AGREEMENT

THIS AGREEMENT BY AND BETWEEN Navigation Construction LLC ("CONTRACTOR"), and APTIM ENVIRONMENTAL & INFRASTRUCTURE, INC., ("APTIM"), a Louisiana Corporation, covers all work, goods or services ordered by APTIM during the term hereof. The parties contemplate that Purchase Orders shall be issued pursuant to this Agreement, setting forth the scope of services to be performed, including the time schedule, compensation and any other special terms. The terms and conditions of this Agreement shall apply to each such Purchase Order and shall take precedence over any conflicting or similar term and condition. NOW THEREFORE, in consideration of the mutual promises, covenants, and agreements contained herein, the parties hereto intending to be legally bound agree as follows:

**1. ITEMS SUPPLIED.** Except for items and facilities furnished by APTIM as set forth on the Purchase Order, CONTRACTOR shall furnish at its expense all labor, services, equipment, appliances, tools, facilities, and materials necessary to commence and complete said work, in a good, expeditious, and workmanlike manner.

**2. DELAY.** CONTRACTOR shall commence and complete the work in accordance with the schedule set forth in the Purchase Order and shall defend, indemnify and hold APTIM harmless for any additional expenses or damages arising out of any delay or CONTRACTOR's inability to proceed with the work.

**CONTRACT PRICE; BILLING.** Unless otherwise provided herein, CONTRACTOR shall, every thirty (30) days, prepare and submit to APTIM, an invoice for the work or services performed during the prior month. The invoice shall clearly reference the applicable Purchase Order Number, and shall be in such form and supported by such documentation as APTIM and its Customer may reasonably require. If the work or services is/are substantially complete, then within (30) days thereof CONTRACTOR shall prepare and APTIM shall receive the final invoice from CONTRACTOR. APTIM shall have no obligation to honor or pay any final invoice received after such period of time. Payment terms are Pay When Paid, + 10% retainage on all approved invoices.

**4. RECORDKEEPING AND AUDIT.** CONTRACTOR shall maintain true and correct records in connection with each service performed and all transactions related thereto and shall retain all such records for twenty-four (24) months after the end of the calendar year in which the last service pursuant to this Agreement was performed. APTIM, at its expense, may from time to time during the term of this Agreement, and at any time after the date the service(s) were performed up to twelve (12) months after the calendar year in which the last service(s) were performed, audit all records of CONTRACTOR in connection with all costs and expenses for which it was invoiced. Upon completion of this audit, the results shall be presented to CONTRACTOR, and APTIM shall pay CONTRACTOR any compensation due as shown by the audit. Any amount as shown by the audit by which the total payment by APTIM to CONTRACTOR exceeds the amount due shall be returned to APTIM.

**5. COMPLIANCE WITH LAWS AND EQUAL OPPORTUNITY.** CONTRACTOR agrees to obtain and maintain all permits and licenses required for CONTRACTOR's performance of said work and to comply with all federal, state and local laws (including labor laws), ordinances and rules, regulations and orders of governmental agencies applicable to said work. CONTRACTOR shall comply with section 503 of the Rehabilitation Act of 1973 (41 CFR 60-741.5) as amended, and 38 USC 2012 of the Vietnam Era Veterans Assistance Act of 1974 (41 CFR 60-250.5), as amended and implementing regulations. CONTRACTOR shall furnish from time to time upon request, written proof of licenses, permits and certifications required under applicable law.

**6. USE OF PREMISES; WORK PROCEDURE.** CONTRACTOR shall perform all work in such manner as to cause a minimum of interference with APTIM.'s operations or those of APTIM.'s customer and the operations of other contractors at the work site and shall take all necessary precautions to protect the premises and all persons and property thereon from damage or injury. CONTRACTOR shall assume responsibility for taking such precautions by CONTRACTOR's and subcontractor's employees, agents, licensees, permittees, and

APTIM00196

subcontractors, and shall comply with all health and safety practices, procedures and guidelines as the same shall be made known by APTIM or its customer, or required by applicable law. Upon completion of the work, CONTRACTOR shall leave the premises clean and free of all tools, equipment, waste materials, and rubbish used or generated by CONTRACTOR. All property used by CONTRACTOR in the performance of this Agreement but owned, furnished, charged to, or paid for by APTIM shall remain the property of APTIM, subject to removal or inspection by APTIM at any time without (i) cost or expense to APTIM or (ii) constituting a breach by APTIM CONTRACTOR understands and agrees APTIM assumes no liability as an owner, operator, manager or person in charge of all or any portion of a site, as arranger for the treatment, transportation, or disposal of any material, or as owner or possessor of any material, with respect to which CONTRACTOR is to perform work. CONTRACTOR also understands and agrees that APTIM did not choose the treatment, storage or disposal site for any material with respect to which CONTRACTOR is to perform work. CONTRACTOR agrees to take no action inconsistent with any of the foregoing including, without limitation, any action, which would subject itself or APTIM to any liability therefor.

### 7. INDEMNIFICATION.

A. The CONTRACTOR agrees to the fullest extent permitted by law to defend, indemnify and hold harmless and hereby releases APTIM .'s Client, APTIM , its parent, subsidiary, and affiliated companies and its and their directors, officers, agents, other contractors, and employees from and against all liabilities, losses, damages, demands, claims, suits, fines, penalties, costs and expenses including reasonable legal fees and other expenses of investigation and litigation arising out of or related to CONTRACTOR's breach of this Agreement and/or for all injuries to and death of persons and for loss of or damage to property arising out of or related to services performed by CONTRACTOR, its agents, or employees, or subcontractors; except to the extent such liabilities or losses are attributable to the sole negligence or willful misconduct of APTIM, its agents, or employees.

B. In addition, CONTRACTOR agrees to the fullest extent permitted by law to defend, indemnify and hold harmless and hereby releases APTIM , its parent, subsidiary, and affiliated companies and its and their directors, officers, agents, other contactors, and employees against any and all liabilities, losses, claims, suits, costs and expenses arising from infringement or alleged infringement of intellectual property rights of others (including patents) covering apparatus, machinery, equipment, methods, processes, and compositions of any material installed and used by CONTRACTOR or its subcontractors in any and all operations under this Agreement.

### 8. INSURANCE. 
CONTRACTOR shall, at all times while operations are conducted hereunder, maintain the following insurance coverages:

A. Workers' Compensation, providing statutory benefits and Employer's Liability Insurance covering the employees of the CONTRACTOR engaged in operations hereunder in compliance with the state having jurisdiction over each employee. The limit for Employer's Liability shall be $1,000,000 per occurrence.

B. Comprehensive General Liability Insurance including products, contractual liability and completed operations with a combined single limit per occurrence and annual aggregate of not less than $5,000,000 for bodily injury and property damage. Such policy shall be endorsed to cover liability of CONTRACTOR under Section 7 hereof.

C. Automobile Liability Insurance with a combined single limit of $1,000,000 per accident for bodily injury and property damage. This insurance shall provide coverage for any automobiles, including owned, hired and non-owned automobiles.

D. In the event that CONTRACTOR's work includes drilling, excavating or other intrusive activities, including environmental remediation work, Pollution Liability Insurance covering losses caused by pollution conditions that arise from the operations of the CONTRACTOR described under the scope of services of this Work Agreement. The coverage shall include bodily injury, property damage, cleanup costs and defense in the amount of $1,000,000 per loss.

E. Such other insurance and/or additional coverage amounts as deemed necessary by APTIM in any Purchase Order issued hereunder to cover the risks inherent to the work or services being performed by CONTRACTOR.

APTIM00197

F. All insurance policies shall waive all rights of subrogation against APTIM The insurance policies provided for in B , C, D, and E above shall name APTIM as an additional insured, shall be primary as to any other valid insurance available to APTIM , and shall contain a standard cross-liability endorsement or severability of interests clause.

G. Certificates evidencing the required insurance coverage (including the coverage required by Section 22 hereof) and endorsements shall be delivered to APTIM on APTIM 's then standard forms prior to commencement of work and shall provide that any material change in or cancellation of any policy(ies) under which such certificates are issued shall not be valid as respects APTIM until APTIM has received thirty (30) days prior written notice of such change or cancellation. Such insurance shall also provide that APTIM shall be an additional insured for two (2) years following completion of CONTRACTOR's work.

**9. BOND.** APTIM reserves the right to demand that the CONTRACTOR furnish to APTIM , at any time during the term of this Agreement, a surety bond(s) issued by a company satisfactory to APTIM authorized to do surety business in the state where the work is to be done or materials are to be furnished on forms approved by APTIM and guaranteeing that the CONTRACTOR will perform all of its obligations under this Agreement and will pay for all work and materials received in conjunction therewith.

**10. INDEPENDENT CONTRACTOR.** It is expressly understood that CONTRACTOR is an independent CONTRACTOR and that neither it nor its employees or subcontractors or their respective employees are servants, agents or employees of APTIM The actual performance and superintendence of all work hereunder shall be by CONTRACTOR, and under the control and direction of CONTRACTOR as to the details of the work; provided, however, APTIM , being interested in the results to be obtained, is authorized to designate a representative or representatives, who shall at all times have access to the location where the work is to be performed for the purposes of observing and inspecting same, and provided further that such work shall be performed in accordance with this Agreement.

**11. LIENS.** CONTRACTOR shall neither file nor permit to be filed or imposed any laborer's, materialmen's, mechanics, or other lien with respect to the work to be performed or material furnished or on any part of the property on which work is performed hereunder and hereby waives any right to file or cause such a lien to be filed. In the event any claim has been asserted against CONTRACTOR, APTIM or its customer, or any lien has been filed with respect to the work, further payment shall not become due until all such claims or liens have been satisfied, released and/or discharged of record without cost or expense to APTIM APTIM may, in default of CONTRACTOR's obligation to do so, procure the release, satisfaction and discharge of any such claim or lien, and deduct all costs and expenses incurred in so doing from any money due or to become due hereunder; or if final payment has been made, CONTRACTOR shall reimburse APTIM for all monies paid to discharge any such claim or lien, including the cost and expense thereof. Without limiting the application of the foregoing in any way, if CONTRACTOR has not received payment by virtue of the application of Section 3, herein for a period of twelve (12) months after the normal due date for such CONTRACTOR invoice, and that the reason for such non-payment by APTIM 's customer is directly and solely related to matters unrelated to CONTRACTOR's performance, then CONTRACTOR shall have the same rights of lien against the customer's property, as APTIM would have, and no greater.

**12. CHANGE ORDERS.** APTIM may order changes, modifications, deletions, and extra work by issuance of written change orders to the Purchase Order from time to time. CONTRACTOR shall make no change in the work without the prior receipt of a written change order, and CONTRACTOR shall not be entitled to compensation for any extra work performed unless prior to commencing said work APTIM has issued a written change order designating the nature of the work and the amount of additional compensation to be paid therefor.

In the event of a deletion of the work, the contract price shall be reduced by a fair and reasonable valuation. In the event of an increase in the work, the contract price shall be increased by a fair and reasonable valuation based upon the original contract rates. If the parties are unable to agree upon the amount of credit or amount of increase, CONTRACTOR shall continue to perform in any

APTIM00198

event, and the dispute shall be submitted to binding arbitration. APTIM shall not be responsible for any reimbursement of lost profits or value of a bargain for any decreases or deletions in the work from the original order.

**13. DEFAULT.** If CONTRACTOR shall become insolvent, or if insolvency, receivership or bankruptcy proceedings shall be commenced by or against CONTRACTOR, or if CONTRACTOR shall make an assignment for the benefit of creditors, or if CONTRACTOR shall materially default in its performance of any provision of this Agreement, then APTIM and CONTRACTOR shall have the following rights, obligations and duties:

A. APTIM , without prejudice to any other right or remedy, may terminate this Agreement forthwith on written notice to CONTRACTOR.

B. CONTRACTOR shall, if requested by APTIM in writing, withdraw from the premises and assign to APTIM such of CONTRACTOR's subcontracts as APTIM may request and remove such materials, equipment, tools and instruments used by CONTRACTOR in the performance of the work as APTIM may direct.

C. APTIM shall have the right, either with or without using CONTRACTOR's materials, equipment, tools and instruments, to complete the work itself or with or through third parties.

D. APTIM shall be entitled to withhold the payment of any further sums due to CONTRACTOR under this Agreement, except such final balance as may be due pursuant to the following paragraph.

E. Upon final completion of the work, APTIM shall determine the amount, if any, of damages suffered by APTIM, the amount to which CONTRACTOR is entitled for its performance of the work up to the date of such termination and the amount, with due regard to the circumstances of termination, sufficient to equitably compensate CONTRACTOR for the use of CONTRACTOR's materials, equipment, tools and instruments; and upon such determination, APTIM shall pay the net amount which may be due, if any, in accordance with such determination.

**14. GUARANTY.** CONTRACTOR guarantees that all work and services performed are in accordance with accepted standards and practices applicable to CONTRACTOR. CONTRACTOR also guarantees that all equipment and materials furnished pursuant to this Agreement against defects in construction and/or workmanship for a period of one (1) year following completion of its work and acceptance by APTIM , except where a longer guaranty is provided by a supplier or manufacturer of such equipment or required pursuant to the terms of any agreement entered between APTIM and the customer of APTIM relating to the work performed. If requested by APTIM , CONTRACTOR shall replace or repair any equipment provided or defective work performed. In the event CONTRACTOR fails to diligently proceed to cure the nonconformity, APTIM may do so and all costs incurred shall be for CONTRACTOR's account. Any purchase order issued pursuant to this agreement shall be expressly conditioned on the inclusion of all express and implied warranties and all remedies under the uniform commercial code.

**15. ASSIGNMENT;   SUBCONTRACTING.** CONTRACTOR shall not assign this Agreement or subcontract the whole or any part of any work performed hereunder, without APTIM 's prior written consent.

**16. EFFECT ON PRIOR AGREEMENTS.** This Agreement consists of this APTIM Environmental & Infrastructure, Inc. Work Agreement, the Purchase Orders issued thereunder incorporating, the terms and conditions of this Agreement, the Special Terms attached to the Purchase Order, and any other attachment as may be required to complete the work or services to be performed by the CONTRACTOR hereunder. The Special Terms shall include the terms and conditions of the applicable agreement between APTIM and its customer (the "Prime Agreement"), other than any provision regarding payment for work or services. Unless otherwise provided herein, the CONTRACTOR hereby agrees, notwithstanding anything to the contrary, to strictly comply in all respects with such Special Terms, and in the event of a conflict between such Special Terms and this Agreement, the provision imposing the greater obligation on the CONTRACTOR shall prevail. This Agreement shall in all respects supersede any prior Work Agreement heretofore executed by and between APTIM and CONTRACTOR relating to work or services to be performed by CONTRACTOR in connection with APTIM 's operations.

APTIM00199

**17. TERM; TERMINATION.** This Agreement shall be in effect for one calendar year from the date of execution by APTIM, and shall continue from year to year thereafter; provided either party may terminate this Agreement at any time, with or without cause, upon thirty (30) days prior written notice to the other. APTIM may terminate at any time, with or without cause in whole or in part, an agreed upon Purchase Order; provided, however, that if APTIM terminates without cause, it shall compensate CONTRACTOR for all duly authorized work performed and reasonable costs incurred prior to the actual receipt of notice.

**18. CONFIDENTIALITY; INTELLECTUAL PROPERTY.** The CONTRACTOR shall not use for other than performance of the Work, or disclose to any third party, any information concerning this Agreement, the work performed, or any data or information received by CONTRACTOR pursuant hereto, except as herein specified without first obtaining the prior written consent of APTIM APTIM shall own all intellectual property developed by CONTRACTOR during the term hereof and arising out of the performance of the services.

**19. LIMITATION OF LIABILITY. IN NO EVENT SHALL APTIM 's CLIENT, APTIM , INCLUDING APTIM 's INSURERS, DIRECTORS, OFFICERS, AFFILIATES, PARENT COMPANIES, OR EMPLOYEES BE LIABLE FOR ANY INCIDENTAL, INDIRECT, IMPACT OR CONSEQUENTIAL DAMAGES OR, IN THE CUMULATIVE AGGREGATE, FOR ANY DAMAGES IN EXCESS OF THE COMPENSATION TO BE PAID BY APTIM UNDER THE PARTICULAR PURCHASE ORDER INVOLVED OR SUCH MINIMUM AMOUNT AS IS PERMITTED BY LAW, IF ANY.**

**20. DELIVERY.** Time is of the essence to APTIM Tender of goods or services shall be made in the manner and on the date specified on the Purchase Order.

**21. EXCUSABLE DELAY.** Neither party shall be liable for damages for delay in delivery or performance arising out of causes beyond its control and without its fault or negligence, including but not limited to, Acts of God or the public enemy, Acts of the government in either its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, embargoes, and unusually severe weather. CONTRACTOR will notify APTIM in writing ten (10) days after the beginning of any such cause, which would affect its performance.

**22. RISK OF LOSS.** CONTRACTOR shall bear all risk of loss, theft, damage, or destruction to (1) the items covered by this Agreement and/or (2) the items covered by any Purchase Order issued to CONTRACTOR, (3) CONTRACTOR's equipment, appliances, tools, facilities and materials necessary to commence and complete the work or on APTIM 's property. CONTRACTOR will at all times carry insurance insuring against such destruction in the face amount, but not less than the replacement value of said items.

**23. TAXES.** Except for sales and use tax, the price for each item covered by this Agreement is inclusive of any other taxes, fees, excises, and/or changes which are now or may hereafter be imposed (whether by federal, state, municipal, or other local public authority) with respect to the manufacture and sale of such items, any services to be rendered by CONTRACTOR hereunder, or the Purchase Order itself. CONTRACTOR shall separately state on its invoice the amount of the sales or use tax applicable to the sale of the items or services covered by this Agreement.

**24. WITHHOLDING OF PAYMENTS OR RETENTION.** Notwithstanding anything to the contrary herein contained, APTIM shall have the right, without any duty, to withhold from any payments due or to become due the CONTRACTOR such amounts as APTIM , in its sole discretion, deems necessary to protect APTIM 's interests with respect to (i) any indebtedness owed by the CONTRACTOR to APTIM on this or any other contract; (ii) any defective work not remedied or any defective materials not removed and replaced; (iii) any third-party claims filed or reasonable evidence indicating probable filing of any such claims; (iv) any Liens in favor of any workers, suppliers of material, or laborers; (v) a claimed failure of the CONTRACTOR to make any payments to its Subcontractors, Suppliers, or laborers; (vi) reasonable doubt that the work can be completed for the unpaid balance of the Contract Price; (vii) reasonable indication that the work will not be completed within the Contract Schedule; (viii) unsatisfactory or untimely prosecution of the work by the CONTRACTOR; (ix) any failure of the CONTRACTOR to comply with this Agreement or Purchase Order or the Attachments thereto; (x) any loss, penalty, damage or attorney's fees

APTIM00200

associated with the CONTRACTOR or the work; (xi) the negligence or willful misconduct of the CONTRACTOR or any of its Representatives, Subcontractors, or Suppliers, or any other person or entity directly or indirectly employed by any of them to perform or furnish any of the work or anyone for whose acts or omissions any of them may be liable; and/or (xii) any set off to which APTIM is legally entitled. Any withholding or retention under this provision will also comply with applicable terms of any U. S. Government contract or subcontract, which applies to performance of work pursuant to this agreement.

**25. DISPUTES.** In the event of any dispute between the CONTRACTOR and APTIM due to any conduct of the Owner, Principal, or Client or involving the Contract Documents, CONTRACTOR shall be bound to any disputes procedure to which the APTIM is bound under the Contract Documents and to any decision rendered thereunder, provided that the CONTRACTOR is given notice that such dispute procedure has been demanded by any party, whether or not CONTRACTOR elects to participate in such procedure. CONTRACTOR shall bear the burden of proving its claims and refuting claims made against it through APTIM by Owner, Principal, or Client and shall bear all of its costs, expenses and attorney's fees in connection therewith. Any dispute between the CONTRACTOR and APTIM arising out of this Work Agreement or breach thereof, but not involving the Owner, Principal or Client, or Contract Documents, may, at the option of APTIM, be submitted to arbitration in accordance with the Construction Industry Rules of the American Arbitration Association in New Orleans, LA.. Any arbitration proceeding instituted under this section or under any disputes procedure in the Contract Documents may be consolidated at the option of APTIM with any other arbitration proceeding then or thereafter pending between APTIM and any other person if the respective arbitrations arise out of common questions of fact or law. The decision of the arbitrator(s) shall be final and binding upon the parties and a judgment upon any award rendered may be entered in any court of competent jurisdiction.

**26. GOVERNING LAW.** This Agreement shall be governed by and interpreted pursuant to the rules and laws of the State of Louisiana without regard to its conflict of law provision.

**27. INTERPRETATION AND SEVERABILITY.** Each provision of this Agreement is severable from the others. Should any provision of this Agreement be found invalid or unenforceable, such provision shall be ineffective only to the extent required by law, without invalidating the remainder of such provision or the remainder of this Agreement. Further, to the extent permitted by law, any provision found invalid or unenforceable shall be deemed automatically redrawn to the extent necessary to render it valid and enforceable.

**28. ENTIRE AGREEMENT.** The terms and conditions set forth herein, including the Purchase Order, Special Terms, and any other attachments thereto constitute the entire understanding of the parties relating to the provision of services by CONTRACTOR to APTIM and shall be incorporated in all work orders and authorizations unless otherwise so stated therein. Any CONTRACTOR initiated modifications or revision of any provisions hereof or any additional provisions contained in any purchase order, acknowledgment or other form of the CONTRACTOR is hereby expressly objected to by APTIM and shall not operate to modify the Agreement, and APTIM 's agreement hereto is expressly conditioned on and limited to the provisions hereof. Nothing in this Agreement shall create any relationship between, or confer any benefit upon, any person other than APTIM and the CONTRACTOR executing this Agreement. This Agreement may be amended only by a written instrument signed by both parties.

**29. ATTORNEY FEES.** Further, in any litigation or arbitration, the Prevailing Party shall be entitled to receive, as part of any award or judgment, eighty percent (80%) of its reasonable attorneys' fees and costs incurred in handling the dispute. For these purposes, the "Prevailing Party" shall be the party who obtains a litigation or arbitration result more favorable to it than its last formal written offer (made at least twenty (20) calendar days prior to the formal trial or hearing) to settle such litigation or arbitration.

**30. ADDITIONAL PROVISIONS APPLICABLE UNDER U.S. GOVERNMENT CONTRACTS OR SUBCONTRACTS.** If this Agreement or any Purchase Order covers work under a contract between APTIM and any agency, agent or prime CONTRACTOR of the United States Government, the additional provisions throughout this Article are made a part hereof, and shall apply to this agreement and/or any Purchase Orders issued pursuant hereto.

APTIM00201

**30.1 DEFINITIONS**
As used throughout these provisions, the following terms shall have the meanings set forth below:
1.1 "Government" means the United States of America and its agencies or agents.
1.2 "CONTRACTOR" and "SUB-CONTRACTOR" shall have the same meaning.
1.3 "Client" means the Government Agency, Agent, or Subcontractor with whom APTIM has executed a contract.
1.4 "Client Contract" means the prime contract between APTIM and its client.

**30.2 GOVERNMENT AUDIT RIGHTS**
Any agency of the Government, which is afforded audit rights under the Client Contract, shall be entitled to the same rights under this Work Agreement.

**30.3 INDEMNIFICATION**
CONTRACTOR shall defend, indemnify, and hold harmless APTIM and Client, its and their respective affiliates, parent companies, directors, officers, employees and agents, to the full extent permitted by applicable law, from and against any and all claims, damages, demands, suits, actions, judgments, liabilities, defaults, or costs and expenses, including court costs and attorney's fees, arising directly or indirectly out of or related to CONTRACTOR's performance hereunder related to the following:

(a) Any assertion that any costs, price, or fee included in or incurred under the Client Contract or this Work Agreement should or will be reduced as a result of, or arising out of facts attributable to, cost or pricing data furnished or required to be furnished by CONTRACTOR which was not complete, accurate, or current.
(b) A violation by CONTRACTOR or any applicable local, state, or federal law, rule or regulation.
(c) Any penalty or fine incurred or assessed which is caused by CONTRACTOR, its employees, agents, suppliers, subcontractors, or consultants.
(d) Any failure by CONTRACTOR to provide any reasonably required certification or supporting information required hereunder or under applicable laws and regulations.
(e) The provision by CONTRACTOR of any false or erroneous certification or supporting information required hereunder or under applicable laws and regulations.
(f) Any false claims by CONTRACTOR under this Subcontract, or any misrepresentation of facts, or fraud, under or in connection with appeals made under the article entitled "Applicable Laws and Disputes."

Any liabilities incurred shall not be deemed or considered "allowable costs" for purposes of this Work Agreement.

**30.4 PUBLIC DISCLOSURES**
CONTRACTOR shall make no public announcements or disclosures relative to information contained in or developed under this Work Agreement except as authorized in writing by the APTIM .

**30.5 APPLICABLE LAWS AND DISPUTES WITH U.S. GOVERNMENT**
If a decision or a question is issued by an authorized representative of the Client under the Client Contract and the decision relates to this Work Agreement, said decision, if binding upon APTIM under the Client Contract, shall also be binding upon the CONTRACTOR with respect to this Work Agreement. However, if CONTRACTOR is affected by such decision, and if APTIM elects not to appeal such decision under the "Disputes" clause of the Client Contract, APTIM shall notify CONTRACTOR. After receipt of such notice by CONTRACTOR, if CONTRACTOR submits a timely written request to APTIM to appeal such decision, APTIM will appeal at CONTRACTOR's cost and expense.

For any appeals or claims to be submitted in excess of $50,000, CONTRACTOR shall certify to APTIM , as to its portion of the claim that: (i) the claim is made in good faith; (ii) the supporting data is accurate to the best of CONTRACTOR's knowledge and belief; and (iii) the amount requested accurately reflects the Work Agreement adjustment for which CONTRACTOR believes the Client is liable.

If any such appeal is denied or otherwise decided adversely to CONTRACTOR's interest, or if CONTRACTOR is otherwise affected by any decision made by any representative of the Client on any question of fact and/or law arising under the Client Contract which is also related to this Work Agreement, from which an appeal under the "Disputes" clause in the Client Contract is not available, said decision, if binding upon APTIM

APTIM00202

under the Client Contract, shall in turn be binding upon APTIM and CONTRACTOR with respect to such questions as it relates to this Work Agreement; provided, however, if CONTRACTOR is adversely affected by any such decision, and if APTIM elects not to bring suit against the Client with respect to such decision, APTIM shall notify CONTRACTOR.

If CONTRACTOR submits a timely written request to APTIM to bring suit against the Client, APTIM shall initiate such suit. If APTIM brings suit against the Client with respect to any such decision, whether at its election or at CONTRACTOR's request, a final judgment in any such suit, if binding upon APTIM under the Client Contract, shall in turn be binding upon APTIM and CONTRACTOR with respect to the question decided as it relates to this Work Agreement.

If any such appeal is taken or brought by APTIM, whether at its election or at CONTRACTOR's request, CONTRACTOR shall assist APTIM in its prosecution thereof to the extent CONTRACTOR's interest may be affected. To the extent requested by APTIM, CONTRACTOR shall prosecute for APTIM any appeal or suit taken or brought at CONTRACTOR's request and, in such event, APTIM shall assist CONTRACTOR in every reasonable manner.

All costs and expenses incurred by CONTRACTOR and APTIM in prosecuting any appeal or suit taken or brought at CONTRACTOR's request shall be paid by CONTRACTOR.

If as a result of any decision or judgment which is binding upon CONTRACTOR and APTIM, APTIM is unable to obtain reimbursement from the Client under the Client Contract, or is required to refund or credit to the Client any amount with respect to any item of cost or fee for which APTIM paid CONTRACTOR, CONTRACTOR shall, on demand, promptly repay such amount to APTIM, together with applicable interest and penalties (if any).

The rights and obligations herein shall survive completion and final payment under this Work Agreement.

Pending the resolution of any dispute, CONTRACTOR shall proceed as directed by APTIM in writing.

**30.6 CLIENT CONTRACT PROVISIONS**
The provisions of the attached Applicable Client Contract Clauses shall apply to this Work Agreement. In interpreting these provisions, the appropriate modifications to make such provisions applicable in all respects to this Work Agreement shall be deemed to have been made and the CONTRACTOR assumes toward APTIM under this Work Agreement all such obligations and duties as Company assumes toward the Client and the government under such provisions.

**31. RIGHTS CUMULATIVE; WAIVER OF TERMS AND CONDITIONS; SURVIVAL.** All of APTIM's rights and remedies are cumulative with and non-exclusive of any and all rights and remedies available hereunder, at law, or otherwise. The failure of APTIM in any one or more instances to enforce one or more of the terms or conditions of this Agreement or to exercise any right or privilege in this Agreement or the waiver by APTIM of any breach of the terms or conditions of this Agreement shall not be construed as thereafter waiving any such or other terms, conditions, rights, or privileges, and the same shall continue and remain in force and effect as if no such failure to enforce has occurred. The terms and conditions of this Agreement shall survive the termination of this Agreement.

**32. NOTICES.** Any notices required or permitted to be sent may be delivered personally, or by telegram, overnight courier service or certified mail return receipt requested to the addresses set forth below or such other address as either party may designate by written notice to the other.

IN WITNESS WHEREOF, CONTRACTOR and APTIM agree to the foregoing **(INCLUDING THE LIMITATION ON LIABILITY IN SECTION 19)** and have caused this Agreement to be executed by their respective duly authorized representatives as of the date set forth below.

APTIM00203

Executed this 11th day of October, 2018.

**CONTRACTOR**

Navigation Construction

By: _____

Name: Mark Curran

Title: Presiden[t]

Address: 252 Peters

St. Croix, USVI

**APTIM ENVIRONMENTAL & INFRASTRUCTURE, INC.**

By: *Jonathon Hunt*

Name: Jonathon Hunt

Title: Subcontract Administrator

Address: 4171 Essen Lane

Baton Rouge, LA 70809

APTIM00204

**EXHIBIT A**
**TO APTIM ENVIRONMENTAL & INFRASTRUCTURE, INC.**
**WORK AGREEMENT**

## I. AFFIRMATIVE ACTION/EQUAL OPPORTUNITY

A. The equal opportunity clause prescribed by Executive Order 11246, as amended by Executive Order 11375, as implemented in Title 41 CFR, Section 60-1.4 is incorporated herein by specific reference and is applicable to orders amounting to $10,000 or more.

B. The affirmative action clause prescribed by the Vietnam Era Readjustment Assistance Act of 1974 and set forth in Title 41 CFR, Section 60-250.4 relating to the affirmative action program for disabled veterans and veterans of the Vietnam Era is incorporated herein by specific reference.

C. The minority business enterprise's requirements of Executive Order 11625 are incorporated herein by specific reference.

D. The affirmative action clause prescribed by Executive Order 11758 and set forth in Title 41 CFR, Section 60-741.4 relating to the affirmative action program for the handicapped is incorporated herein by specific reference.

## II. CERTIFICATIONS

A. OCCUPATIONAL SAFETY AND HEALTH ACT

Contractor shall observe and comply with the Federal Occupational Safety and health Act of 1970 and with all safety and health standards promulgated by the Secretary of Labor under authority therefore, and with all applicable state occupational safety and health laws and regulations. Contractor and any subcontractor hereunder shall not require any laborer or mechanic employed in the performance of the contract to work in surroundings or under working conditions which are unsanitary, hazardous, or dangerous to his health and safety. This provision shall also be included in any contracts with subcontractors.

B. AFFIRMATIVE ACTION PLAN

If Contractor has 50 or more employees and the contracts of Sale are in an amount of $50,000 or more, the Contractor may be required under Section 60-1.40 of Title 41 CFR to develop a written affirmative action compliance program for each of its establishments. If the Contractor is so required, it agrees to do so within 120 days from the commencement of a contract and maintain such program until such time as it is no longer required by law or regulation.

## III. PROHIBITION OF SEGREGATED FACILITIES (FEB 1999)

A. *SEGREGATED FACILITIES,* as used in this clause, means any waiting rooms, work areas, rest rooms and wash rooms, restaurants and other eating areas, time clocks, locker rooms and other storage or dressing areas, parking lots, drinking fountains, recreation or entertainment areas, transportation, and housing facilities provided for employees, that are segregated by explicit directive or are in fact segregated on the basis of race, color, religion, sex, or national origin because of written or oral policies or employees custom. The term does not include separate or single user rest rooms or necessary dressing or sleeping areas provided to assure privacy between the sexes.

B. The Contractor agrees that it does not and will not maintain or provide for its employees any segregated facilities at any of its establishments, and that it does not and will not permit its employees to perform their services at any location under its control where segregated facilities are maintained. The Contractor agrees that a breach of this clause is a violation of the Equal Opportunity clause in this contract.

C. This clause shall be included in every subcontract and purchase order that is subject to the Equal Opportunity clause of this contract.

APTIM00205

**EXHIBIT B**
**TO APTIM ENVIRONMENTAL & INFRASTRUCTURE, INC.**
**WORK AGREEMENT**

Additional Provisions Applicable to Electronic and Purchasing Card Transactions

**1.0   DEFINITIONS:**

1.1   Electronic Transaction - Any transaction between Contractor and APTIM Environmental & Infrastructure, Inc., f/k/a Shaw Environmental, Inc., (APTIM) which is completed through an email, fax, web application, phone or Internet.

1.2   Electronic Signature - An electronic sound, symbol, or process, attached to or logically associated with a contract or other record and executed or adopted by a person (or entity) with the authority and intent to sign the record.

1.3   APTIM Electronic Signature - A signature transmitted electronically of the individual Buyer or Authorized Agent who is duly authorized to so act on a Purchase Order, other Contract or Subcontract document originating from an APTIM source system, computer, web, fax, or server. Said Signature shall be in a secure format that is password protected.

**2.0   USE OF ELECTRONIC TRANSACTIONS**

2.1   The parties agree that certain business conducted between the parties may be via an Electronic Transaction. In those circumstances, the APTIM Work Agreement terms and conditions shall apply to each such transaction, including but not limited to electronically transmitted purchase orders, contracts, agreements, subcontracts or authorized Purchasing Card Transactions.

2.2   The parties agree to be bound by the contracts, purchase orders, agreements, or subcontracts with the transmission of an Electronic Signature and such signature shall attest to the validity of the documents so executed. APTIM's Electronic Signature shall be in accordance with the definition and format as described in 1.4 above. CONTRACTOR's Electronic Signature need only meet the requirements of the definition of 1.2 above, unless otherwise provided herein.

IN WITNESS WHEREOF, CONTRACTOR and APTIM ENVIRONMENTAL & INFRASTRUCTURE, INC. agree to the foregoing and have caused these Addendums to be executed by their respective duly authorized representatives as of the date set forth below.

| APTIM ENVIRONMENTAL & INFRASTRUCTURE, INC. | CONTRACTOR |
|---|---|
| | Navigation Construction |
| By: *Jonathon Hunt* | By: *[signature]* |
| Name: Jonathon Hunt | Name: Mark Curran |
| Title: Subcontract Administrator | Title: President |
| Date: 10/11/18 | Date: 10/11/2018 |

APTIM00206