**JOINT RULES AND REGULATIONS**
**FOR THE UNITED STATES VIRGIN ISLANDS**
**LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM**

Any act required or permitted by this chapter to be performed by any particular official of the Agency may to the extent permitted by law, be performed by an individual duly designated in writing by such official. Where actions or approvals are required of or by the Agency under this chapter and no officer or employee of the Agency is specifically designated herein to take such actions or make such approvals, such actions or approvals may be made by the Executive Director of the Agency.

**Article 2:      29 VIC §941-§944**

**Affordable Housing Financing; Construction and Mortgage Loans;**
**Housing Development Plans and Agreements**

29 VIC §940(b)(7)-200.      **Qualification of Applicant for Affordable Housing Development.**

Before any person may be approved as a provider of affordable housing or receive a commitment for a construction or mortgage loan or advance or other program assistance for a housing development to be constructed or rehabilitated, said person must first apply for and obtain certification that said person is qualified to be the Applicant for such housing development. Each person applying to be so certified shall submit to the Agency such information, including but not limited to, financial statements, contractors qualification statement, business license, certificate of good standing, operating history, record of compliance with federal and Virgin Islands "Equal Opportunity", "Employment of Project area Residents and Contractors" and "Affirmative Fair Housing Marketing" guidelines, and details concerning the proposed housing development, as shall be promulgated and required by the Agency, to make the determinations required in this section. Application for such certification may be made as part of the application of the person for approval of an Affordable Housing Development Plan and execution of an Affordable Housing Development Agreement.

Before the Agency may make or approve a commitment to any Applicant for delivery of an Affordable Housing Development Agreement or a construction loan and/or mortgage loan or advance, as the case may be, the Agency shall determine, taking into account the nature of the housing development and the Person, that said person:

(a)      Is creditworthy,

(b)      Is financially responsible,

(c)      Is (if not a natural person) duly organized, in good standing and qualified to do business in the United States Virgin Islands.

(d)      Is capable of proceeding promptly to construct and complete the affordable housing development,

Page **10** of **44**

APTIM00146

## JOINT RULES AND REGULATIONS
### FOR THE UNITED STATES VIRGIN ISLANDS
### LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM

(e)    Has the ability to operate or market the affordable housing development as demonstrated by experience in other similar projects,

(f)    Has a commitment to construct and operate or market, as the case may be, the affordable housing development in accordance with all applicable federal and Virgin Islands "Equal Opportunity," "Employment of the Project Area Residents and Contractors" and "Affirmative Fair Housing Marketing" guidelines.

(g)    Satisfies the requirements of an eligible developer under the Rules and Regulations of the Agency.

29 VIC §940(b)(7)-201.    **Criteria for Affordable Housing Development under the Program**

In order to obtain financing and Program assistance in the form of a construction loan or mortgage loan and/or advance, from the Housing Trust Fund, or subsidy in the nature of tax benefits, or any other assistance under the Program in connection with an affordable housing development to be constructed or rehabilitated by an Applicant pursuant to an approved Affordable Housing Development Plan and Agreement, a person applying to be certified as an Applicant pursuant to Section 200 of this Article shall submit to the Agency such information as is required by the Agency to enable the Agency to make the determinations required by this Section.

(a)    **Mandatory Requirements.**  No Affordable Housing Development Plan, requesting a construction loan or mortgage loan and/or advance or other Program assistance shall be approved unless the Agency is assured:

(1)    That the proposed affordable housing development will be economically feasible;

(2)    That the proposed affordable housing development is consistent with the current housing objectives of the Government;

(3)    That the proposed affordable housing development has or will have sufficient access to support schools, employment, retail merchants and all necessary utilities and infrastructure improvements;

(4)    That the location of the proposed affordable housing development is consistent with the Government's policy or dispersing housing developments throughout communities and avoiding undue concentrations of persons and families of low-income and rental housing, except where overriding considerations of economic need necessitate modifying these requirements in order to accomplish the housing objectives of the Government;

APTIM00147

### JOINT RULES AND REGULATIONS
### FOR THE UNITED STATES VIRGIN ISLANDS
### LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM

(5)    That the proposed affordable housing development will provide safe, sanitary and decent housing meeting environmental standards; and

(6)    That the proposed affordable housing development meets the requirements of the Rules and Regulations of the Agency, and construction guidelines promulgated thereunder.

(b)    **Priorities in Selection of Developments for Financing and Assistance**. Various sections of the Act designate housing priorities to be reflected in the administration of the Program. Necessarily, the emphasis on particular priorities, as reflected in the Government's current housing objectives, will change over time due to circumstances and conditions. Within these parameters, the Agency will give priority consideration in approving Program commitments to affordable housing developments which or in which:

(1)    assist the Agency in making full use of available federal housing subsidies;

(2)    at least ten percent (10%) of the units are to be rented to very low-income persons or families, unless an economic analysis of a particular affordable housing development demonstrates that it is not feasible to achieve;

(3)    at least a specified number of housing units, representing that percentage of units in the total development which is equivalent to the percentage of financing and other total development, are to be rented or sold to low-income person or families. For rental housing developments, the specified rental mix must continue throughout the term of the Affordable Housing Development Agreement;

(4)    assist the Agency in meeting the requirement under the Act that at least five percent (5%) of all affordable housing units developed under the Program be designed to accommodate and meet the needs of disabled persons as defined in Title 34 V.I.C., Section 452;

(5)    assist the Government in balancing its program activities among St. Thomas, St. Croix and St. John Islands in general proportions to the relative needs for housing assistance in those areas identified in the Agency's Housing Assistance Plan (or any similar government plan) and any applicable emergency housing assistance plan. In the absence of such an adopted plan, the Agency will consider data relating to such needs developed by the Agency or other governmental body; and

(6)    reflect the housing needs of identifiable groups or persons such as (but not limited to) the elderly, the disabled, two person households comprised of an adult and child, large households, and persons displaced from housing by governmental actions or natural disasters, as those needs are identified. In the absence of such adopted plan, the Agency will

APTIM00148

**JOINT RULES AND REGULATIONS
FOR THE UNITED STATES VIRGIN ISLANDS
LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM**

consider data relating to such needs developed by the Legislature, the Governor and any other federal or local agency.

(c)    **Additional Objectives**. In addition to the foregoing mandatory requirements and priorities in selecting affordable housing developments for approval, the Agency shall also review the following factors in determining whether a program commitment shall be approved:

(1)    Whether the affordable housing development is of sufficient quality in terms of amenities, scale of development, architectural treatment, landscaping, recreational facilities and aesthetic impact on the surrounding community;

(2)    Whether the affordable housing development will contribute to employment opportunities; is located in an area with low vacancy rates; and will promote the recovery and growth of economically depressed businesses; and

(3)    Whether the affordable housing development will increase the range of housing choices for very low-income and low-income persons rather than increasing the concentration or isolation of such income groups.

29 VIC §940(b)(7)-202.    **Construction Standards, Access for Physically Disabled**

At least five percent (5%) of all new affordable housing units within each affordable housing development for which Program commitments are made shall:

(a)    Be free of architectural barriers in common areas and allow access to the grounds on which the affordable housing development is located;

(b)    Provide barrier free entrances and entry thresholds to all units in any building with an elevator, and in any building with units constructed specifically for the disabled;

(c)    For units specifically constructed for disabled persons, all bathrooms shall allow access and usability by person in wheelchairs; and shall meet design criteria established by the Agency in consultation with professionals skilled in the design of such facilities.

29 VIC §940(b)(7)-203.    **Non-housing Facilities**

(a)    Affordable housing developments may include such streets, sewers, utilities, site preparation, open space, and landscaping as may be required by law and as the Agency determines are necessary or appropriate in connection with the housing development.

(b)    Affordable housing developments may include other non-housing facilities such as administrative, community, health, recreational, educational, commercial, dining, and

Page **13** of **44**

## JOINT RULES AND REGULATIONS
### FOR THE UNITED STATES VIRGIN ISLANDS
### LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM

childcare facilities. The Agency shall exercise reasonable judgment in encouraging and approving applications for Program assistance for affordable housing developments containing such non-housing facilities, taking into account the following factors:

(1)   Whether said facilities will directly benefit the occupants of the development;

(2)   Whether said facilities will be compatible with a suitable living environment for the occupants;

(3)   The nature of the intended occupants of the development, whether families with children, the elderly, the disabled, or others;

(4)   The needs of occupants and whether such facilities are or will be otherwise provided within the community for occupants of the affordable housing development;

(5)   The prior availability of such facilities in the community;

(6)   The economic feasibility of including such facilities and the potential impact on housing affordability;

(7)   The availability of and feasibility of using other sources of financing for such facilities; and

(8)   The availability of federal subsidies for affordable housing developments containing such facilities.

(c)   In reviewing the factors enumerated in (b) above, for the inclusion of non-housing facilities within any request for Program assistance, the Agency shall be guided by the policies of:

(1)   Encouraging common areas, play areas and childcare facilities in family housing developments, and congregate dining facilities in housing projects primarily for elderly persons;

(2)   Requiring all such commercial facilities financed with a below-market-interest rate loan, to the extent of any benefit from such rate, to contribute to the support of the residential units in the affordable housing development;

(3)   Avoiding duplication of services or functions existing within the community in areas convenient to the housing development which are provided at reasonable cost to the occupants of the housing development; and

Page 14 of 44

APTIM00150

### JOINT RULES AND REGULATIONS
### FOR THE UNITED STATES VIRGIN ISLANDS
### LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM

   (4)  Complying with all applicable requirements of the Internal Revenue Code of 1986, as amended, and the Treasury Regulations and other authority promulgated thereunder, as applied to the United States Virgin Islands.

29 VIC §940(b)(7)-204.  **Bond financing to Applicants of Affordable Housing; Terms and Conditions of Loans and Advances**

   Construction and/or mortgage loans or advances to Applicants shall be made pursuant to authority conferred under the Act.  The Agency shall have primary responsibility for approving any financing of the acquisition and development of owner-occupied housing developments under the Program and under the Agency's "Home Mortgage Program" undertaken pursuant to Title 21 and rental housing developments under the Program through the Agency or the Authority. To the maximum extent feasible, affordable housing initiatives undertaken pursuant to the Act and the Program shall be coordinated with the Agency's "Home Mortgage Program" in order to maximize the production of affordable housing in the United States Virgin Islands.

   Rental and owner-occupied housing developments can also be financed by the Authority and developed by the Agency pursuant to construction and development agreements with Applicants under which advances of funds for housing development shall be made. Rental and owner-occupied housing developments may be owned by the Government, acting through the Agency.

   Each construction and/or mortgage loan or advance to an Applicant for an affordable housing development shall be made on such terms and conditions as the Agency or the Authority shall determine are necessary or appropriate to provide sufficient security for obligations to the Agency or the Authority to ensure that the construction loan and/or mortgage loan or advance comply with any other applicable Program requirements. Said terms and conditions shall include, but are not limited to, the following:

   (a)  That unless subordination to a prior lien is agreed to by the Agency or the Authority, the mortgage securing said loan or advance shall create a first priority lien on the housing development with respect to which said loan or advance is made and shall be executed and recorded in accordance with existing applicable laws;

   (b)  That the mortgage shall provide, among other things, that the Agency or the Authority, upon default by the Applicant under the terms of the mortgage and in the Agency's or the Authority's discretion, either may declare all sums secured thereby immediately due and payable by executing and recording or causing to be executed and recorded a notice of default and election of sale or by commencing an appropriate foreclosure action. In addition, upon the occurrence of a default, the Agency or the Authority may, in person, by agent or by receiver appointed by a court enter upon and take possession of the housing development, collect all rents, and perform any acts necessary to maintain or operate it, all in such manner as to not cause the cessation of any federal subsidies;

**Page 15 of 44**

**JOINT RULES AND REGULATIONS**
**FOR THE UNITED STATES VIRGIN ISLANDS**
**LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM**

(c)   That the amount of said construction loan and/or mortgage loan or advance shall be within all limitations prescribed by law;

(d)   That the scheduled construction loan and/or mortgage loan repayment or recoupment of advances, including fees and charges together with interest accumulated on undisbursed funds shall be estimated to be sufficient in amount to enable the Agency or Authority to meet on a timely basis its administrative expenses and debt service on any notes or bonds issued or to be issued in connection with said construction loan and/or mortgage loan or advance;

(e)   That the Applicant, Agency or the Government (in the case of advances), as the case may be, shall have or acquire title to the site of the affordable housing development free and clear of all liens or encumbrances which would materially affect the value of said site as a site for the housing development or a leasehold interest in the site of duration and terms found acceptable by the Agency or Authority;

(f)   That the affordable housing development should have been approved by the Agency pursuant to Section 201 and Section 209 of this Article;

(g)   That any contract for the construction of the housing development shall be approved by the Agency pursuant to Article 4 of this Chapter; and

(h)   That disbursements of proceeds from the Agency or Authority to the Applicant for progress payments for construction work shall be pursuant to procedures as provided in Section 206 of this Article.

29 VIC §940(b)(7)-205.   **Loan Interest Rate Limitations**

The yield to the Agency or the Authority with respect to any construction loan or mortgage loan on an affordable housing development, which loan is made by the Agency or the Authority to an Applicant (taking into consideration any fees and charges imposed by the Agency or the Authority) shall be such that any bonds or notes issued by the Agency or Authority shall not be "arbitrage bonds" within the meaning of 26 U.S.C. Section 148 of the Internal Revenue Code of 1986, as amended.

29 VIC §940(b)(7)-206.   **Construction Progress Payment Disbursements**

(a)   **Schedule of Disbursements**. The proceeds of a construction loan or advance to an Applicant shall be disbursed pursuant to a construction loan agreement or a construction disbursement agreement. Disbursements shall be applied to the payment of invoice for labor performed, materials used or costs incurred in connection with the construction and development of the affordable housing development excepting that payments authorized pursuant to Section

Page 16 of 44

APTIM00152

**JOINT RULES AND REGULATIONS**
**FOR THE UNITED STATES VIRGIN ISLANDS**
**LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM**

206 (b) may be for labor to be performed, materials to be used, or costs to be incurred. Disbursements shall be made only after presentation of satisfactory evidence that such claims are being so paid.

(b)     The Agency or Authority shall not be obligated to make any disbursement of proceeds to an Applicant until each of the following conditions has been satisfied:

(1)     The Applicant shall have executed and/or submitted to the Agency or Authority all such documents or other forms of evidence as are required by and in such form as is satisfactory to the Agency or Authority evidencing and securing the loan or advance;

(2)     There exists no condition, event or act which would constitute an event of default under the construction loan agreement or construction disbursement agreement;

(3)     No representation or warranty of the Applicant has been found to be false or inaccurate;

(4)     With respect to disbursements subsequent to the initial disbursement, the remaining undisbursed proceeds have not been determined by the Agency or Authority to be less or likely to be less than the amount required to pay expenses incurred or to be incurred in connection with the completion of the affordable housing development and the fulfillment of the Applicant's obligations under the construction loan agreement or construction disbursement agreement, and there are no unreleased mechanic's liens or stop notices in connection with the affordable housing development; and

(5)     Such other conditions as are required by the Agency or Authority.

29 VIC §940(b)(7)-207.     **Affordable Housing Development Plans; Application**
                           **Procedure; Preferences**

(a)     **Content of Plans**.     Persons desiring to construct or rehabilitate affordable housing under the Act shall apply to the Agency for approval of Affordable Housing Development Plans in response to Requests for proposals published from time to time by the Agency or during application periods from time to time established by the Agency. Five (5) copies of the proposed Plan, including responses to each of the items hereinafter prescribed shall be submitted to the Agency (or the Project Manager):

(1)     A description of the affordable housing development (including non-housing facilities), citing the number of units and the size of the units.

(2)     Complete plans and specifications for the units to be constructed.

(3)     A copy of all information, maps, data and other items submitted to of

APTIM00153

### JOINT RULES AND REGULATIONS
### FOR THE UNITED STATES VIRGIN ISLANDS
### LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM

Planning and Natural Resources pursuant to the Virgin Islands Code, Title 29, Chapter 3, Section 232(a) in connection with an application for a planned area development affordable housing development permit.

(4)     A schedule of sale prices or rents for the dwelling units to be constructed, and the proposed number of units to be targeted to very low, low-income and moderate-income persons.

(5)     The proposed sources of federal and local governmental and private funding available for financing and the approximate percentage of such funds to be applied to the estimated final development costs.

(6)     A description of the proposed site and its purchase price, and if the site is Government-owned, the proposed acquisition cost of the site to be paid to the Government.

(7)     A map indicating the location of the proposed housing development in relation to shopping centers, schools, recreation, transportation and other facilities and services.

(8)     A written statement of the site's usability, including information on current zoning, access, and availability, of utilities and other infrastructure, and a description of adjoining property.

(9)     A statement regarding any project subsidies sought from a Government agency, authority or department.

(10)    The projected timetable for completion of the housing development and related non-housing improvements, if any.

(11)    A property management and maintenance plan which shall include a provision for a periodic inspection of rental housing developments.

(12)    A statement regarding the direct benefits of Program assistance to very low-income, low-income and moderate-income persons and families to reside in the housing to be constructed or rehabilitated.

(13)    The projected amount of administrative expenses expected to be incurred.

(14)    A cash flow analysis showing the benefits to be derived from the Program, including an analysis of the cash flow impacts of the tax benefits and subsidies from the Housing Trust Fund.

(15)    A specific request for an explanation of need for subsidies from the Housing Trust fund.

Page 18 of 44

APTIM00154

### JOINT RULES AND REGULATIONS
### FOR THE UNITED STATES VIRGIN ISLANDS
### LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM

(16)   Sources of construction financing, if any, and sources of collateral for such financing.

(17)   Any other information requested by the Agency in its Request for Proposal or as may be required in the Rules and Regulations of the Agency.

Unless otherwise provided pursuant to an appropriate agreement, memorandum of understanding, executive order or other official act, Affordable Housing Development Plans with respect to rental housing developments and Affordable Housing Development Plans for owner-occupied housing shall be reviewed and approved by the Agency.

(b)   **Selection of Developments.** The Agency shall competitively rank each Affordable Housing Development Plan in accordance with criteria to be established by the Agency, which shall be based upon the following factors:

(1)   The proposed cost of the housing to be constructed or rehabilitated;

(2)   The direct benefits of Program assistance to very low-income, low-income and moderate-income persons and families proposed to reside in the housing units;

(3)   The demonstrated capacity of the Applicant to carry out the proposal;

(4)   The economic feasibility and cost of the proposal as determined by the Agency and the Authority;

(5)   The extent to which the Applicant demonstrates potential cost savings by combining the benefits afforded by the different types of assistance created under the Act, together with the operation of federal and private initiatives and incentives; and

(6)   The extent to which the proposal would further the purposes of the Act.

The Agency shall have the right to reject any and all applications.

(c)   **Preferences.** Preference shall be given to builders, developers, contractors and subcontractors licensed to do business in the United States Virgin Islands for a period of at least one (1) year. In addition, in order to assist small businesses, including specifically, local builders, contractors and developers who each have significant construction industry experience, the Agency shall encourage and facilitate joint ventures between such small businesses and larger, more experienced construction firms.

For purposes of this paragraph "small businesses" shall have the meaning ascribed to it under the Programs administered by the United States Small Business Administration.

APTIM00155

### JOINT RULES AND REGULATIONS
### FOR THE UNITED STATES VIRGIN ISLANDS
### LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM

In addition, the Agency shall give preference to housing developments that accommodate and meet the housing needs of disabled persons, as defined in Title 34 V.I.C., Section 452.

(d) **Advertisement and Solicitation of Proposals.** The Agency shall advertise the availability of the Program and shall solicit proposals for specific housing developments from public entities and from private non-profit and for-profit housing sponsors and developers who wish to construct, rehabilitate, develop, or aid in the development of affordable housing for very low-income, low-income, and moderate-income persons. Notice shall be published in a newspaper of general circulation in the United States Virgin Islands. In addition, the Agency, shall solicit builders, contractors and others pursuant to Requests for Proposals, which may be in the form attached as Exhibit A hereto or such other form as may be approved by the Agency.

29 VIC §940(b)(7)-208. **Affordable Housing Development Agreements**

Applicants shall be required to execute Affordable Housing Development Agreements as required by the Act. Such agreements shall incorporate the requirements of the Act and these Rules and Regulations. The Agreements may be in the form attached as Exhibit B hereto or such other form as may be approved by the Agency.

29 VIC §940(b)(7)-209. **Coordination between Government Agencies**

The Agency shall have primary responsibility for the implementation of rental housing development aspects and the implementation of the owner-occupied housing development aspects of the Program consistent with the Agency's "Home Mortgage Program" and the Rules of Regulations of the Agency. The Agency shall finance the development of rental housing developments and owner-occupied housing developments consistent with the purpose of the Act and these regulations. The Authority shall cooperate with the Agency and in the disbursement of funds to the Agency from the Housing Trust Fund and the entering of loan agreements, disbursement agreements or funding agreements with such entities requiring proceeds from the Housing Trust Fund.

29 VIC §940(b)(7)-210. **Administration of Housing Trust Fund**

Moneys credited to the Housing Trust Fund shall be used by the Authority to carry out and effectuate the public purposes of the Act and these regulations, including, without limitation, to secure credit enhancement from financial institutions as necessary to secure bonds and notes issued by the Authority for affordable housing developments, to provide or induce the provision of mortgage insurance for housing developed under the Program, to make cistern and house foundation loans, to make subordinated mortgage loans to very low-income, low-income and moderate-income persons, to provide down-payment assistance with respect to the purchase of owner-occupied housing units by low-income and moderate-income families, to provide

APTIM00156

# JOINT RULES AND REGULATIONS
## FOR THE UNITED STATES VIRGIN ISLANDS
### LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM

assistance for low-income rental housing developments, to pay closing costs with respect to housing units purchased by low-income persons and moderate-income persons, to provide other appropriate assistance to persons pursuant to Affordable Housing Development Agreements, including, but not limited to loans to Applicants, to pay Program expenses, to make construction loans for the construction of both rental and owner-occupied units, to pay expenses of training for tenants and homeowners of housing developments, to pay financing costs associated with Section 943 of the Act, to purchase land, to plan, design and construct or have constructed, affordable housing units and required associated infrastructure, to plan and design non-housing facilities which improve the quality of life of the residents, such as recreation facilities, commercial facilities, fire houses, police substations, and other facilities included at Section 203 of these Regulations, and such other purposes as shall be determined by the Authority, the Agency, the Governor and the Legislature.

## 29 VIC §945

**29 VIC §940(b)(7)-211.**        **Limitations on Sale or Rental of Affordable Housing Units**

(a)        **Sale or Rental**. Subject to the provisions of this Section and in consideration of the incentives provided directly by the Program, every affordable housing unit provided directly by the Agency and financed by the Agency or the Authority, or provided by any Applicant pursuant to an approved Affordable Housing Development Plan and Agreement shall be offered for sale or rental, as the case may be, to eligible very low-, low- and moderate-income persons and families.

The Agency, with respect to units to be sold to eligible purchasers, and with respect to rental housing units, shall maintain a list of eligible persons of very low-, low- and moderate-income and shall notify such eligible persons of the proposed offering of housing units for sale or rental, as the case may be, and shall furnish such other assistance and information as may be appropriate.

Affordable housing units provided pursuant to an approved Affordable Housing Development Agreement shall be made available exclusively for persons identified on the lists maintained by the Agency, with respect to owner-occupied units and rental units, for a control period of one-hundred and eighty (180) days from the date such units are first made available for occupancy, after which time such units may be offered to the general public after giving written notice to the general public through the news media. Applicants shall make a good faith effort to enter into sales contracts or leases with persons identified by the Agency. The eligibility lists maintained by the Agency shall be supplemented and amended from time to time in order to maintain a current list of persons eligible for housing assistance under the Program. The eligibility of purchasers on the list maintained by the Agency shall be determined in accordance with Rules and Regulations of the Agency.

(b)        **Purchase or Lease of Affordable Housing Units by the Agency.** In view of the

APTIM00157

### JOINT RULES AND REGULATIONS
### FOR THE UNITED STATES VIRGIN ISLANDS
### LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM

critical need for housing for very low-, low- and moderate-income persons and families, the Agency shall have, with the agreement of Applicants, the option to purchase or lease, as the case may be, from Applicants, affordable housing units provided pursuant to an Affordable Housing Development Agreement. This option may be assigned to eligible persons of very low-, low- and moderate-income.

If the Agency chooses to exercise its option, it shall do so by submitting to the Applicant a notice of intent to exercise its option for a specified number of affordable units covered by the option. Such notice shall be delivered prior to the lapse of the exclusive offering period specified above. Any affordable housing unit so purchased or leased by the Agency, shall be sold or rented only to very low-, low- or moderate-income persons and families.

(c)     **Control of Subsequent Sale or Rental of Affordable Housing Units.** Affordable housing units constructed or offered for sale under this Section shall not be sold during a control period of twenty (20) years from the date of the original sale for a price greater than a sales price which equals the original selling price plus a percentage of the unit's original selling price equal to the increase in the cost of living, as determined by the United States Department of Labor's Consumer Price Index, plus the fair market value of improvements made to the unit between the date of original sale and the date of resale, plus an allowance for payment of closing costs. The aforesaid sale price formula may be amended or modified from time to time by the Agency.

Any affordable housing unit offered for resale during the aforesaid twenty (20) year control period shall be first offered for sale exclusively for a priority period of one hundred and twenty (120) days by the Agency to persons determined by the Agency to be of eligible very low-, low- or moderate-income. After expiration of the one hundred and twenty (120) day priority period, such unit may be offered for sale to the general public after giving written notice to the Agency of such proposed offering to the general public and notice to the general public through the news media.

Affordable housing units constructed or offered for rent under this Section shall not be rented during a control period of twenty (20) years from the date of original rental at a rental rate greater than that determined in accordance with the related Affordable Housing Development Agreement. Whenever any affordable housing rental unit is offered for rent during the aforesaid twenty (20) year control period, it shall be offered exclusively for thirty (30) days to the Agency and to persons of very low-, low- and moderate-income, as defined in these Regulations and as determined eligible by the Agency. The Agency may assign its right to rent such units only to persons of very low-, low- or moderate-income who are eligible for assistance under any federal, state or local housing program.

(d)     **Recapture of Program Subsidies.** Affordable housing units sold to eligible persons and families under the Program and subsequently offered for resale to the general public by the original purchaser during the twenty (20) year control period in contravention of

Page 22 of 44

APTIM00158

## JOINT RULES AND REGULATIONS
## FOR THE UNITED STATES VIRGIN ISLANDS
## LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM

paragraph (c) of this Section 212 shall be subject to the following recapture rule:

Affordable housing units shall not be sold, transferred or otherwise disposed of within two hundred forty (240) months from the date of the original purchase thereof under the Program unless (i) the transferee of the affordable housing unit satisfies the eligibility requirements under the Program in effect on the date of sale and transfer or (ii) the original purchaser or his transferee agrees to pay a recapture penalty based on a percentage of the amount of the selling price in excess of the original purchase price ("excess profits") of the unit as follows:

| Months after Closing Date | Percentage Penalty of Excess Profits |
|---|---|
| Up to 12 | 100% |
| 13-24 | 95% |
| 25-36 | 90% |
| 37-48 | 85% |
| 49-60 | 80% |
| 61-72 | 70% |
| 85-96 | 65% |
| 97-108 | 60% |
| 109-120 | 55% |
| 121-132 | 50% |
| 133-144 | 45% |
| 145-156 | 40% |
| 157-168 | 35% |
| 169-180 | 30% |
| 181-192 | 25% |
| 193-204 | 20% |
| 205-216 | 15% |
| 217-228 | 10% |
| 229-240 | 5% |

The above restriction and recapture provision shall be set forth in the Deed of Conveyance or other document of conveyance and shall further be disclosed to the original purchaser of the affordable housing unit at the time of sale thereof. Additional recapture provisions may be applicable pursuant to federal requirements governing the issuance of tax exempt bonds.

APTIM00159

**JOINT RULES AND REGULATIONS
FOR THE UNITED STATES VIRGIN ISLANDS
LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM**

**29 VIC §940**

**Article 3:**   **Equal Opportunity; Participation of Project Area Residents, Small Business and Minorities**

29 VIC §940(b)(7)-300.      **Equal Employment and Business Opportunity**

(a)      Any person applying for approval of a construction and/or mortgage loan or other Program assistance for an affordable housing development pursuant to an Affordable Housing Development Plan shall submit at the time of application for said approval, and any contractor or subcontractor to be engaged in the construction of an affordable housing development shall submit at or prior to the time that the construction contract is submitted pursuant to Section 201 hereof, an "Affirmative Equal Opportunity Action Plan" under this Section.  The Agency shall review each such plan and shall require amendments to such plan as are necessary to bring it into compliance with the requirements of this Section.

Such plan shall contain such provisions as the Agency shall deem necessary and appropriate to further the Government's policy of equal opportunity for business and employment without regard to race, sex, marital status, color, handicap, religion, national origin, sexual orientation, or ancestry. The plan shall also contain provisions which further the objective of assisting small Virgin Islands businesses, including builders, contractors, subcontractors and others who have demonstrated proficiency in their respective field but who lack sufficient construction industry experience as to qualify independently for participation in the Program. The Agency may recommend joint venture relationships between small businesses and larger, more experienced construction firms, to achieve the objectives of this Section. Unless waived, such plan at a minimum shall include:

(1)      A written compliance program, which includes the following:

(A)      A company equal opportunity policy endorsed by the Applicant's chief executive officer or managing partner;

(B)      A description of the affirmative action effort for the involvement of small subcontractors and businessmen;

(C)      Description of a self-monitoring system which will analyze and measure equal opportunity efforts on a regular basis; and

(D)      Identification of a corporate officer as an equal opportunity officer responsible for enforcement of this plan.

APTIM00160

JOINT RULES AND REGULATIONS
FOR THE UNITED STATES VIRGIN ISLANDS
LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM

29 VIC §940(b)(7)-301.        **Employment of Project Area Residents and Contractors**

(a)        Unless waived by the Agency, as appropriate for good cause shown, an Affordable Housing Development Agreement with an Applicant in connection with a "Section 3 covered project" (as defined by 24 C.F.R. §135.5(m) shall contain a "Section 3 clause" as defined by 24 C.F.R. §135.5 (m).

(b)        Upon application by an Applicant in the performance of its duties under a "Section 3 clause" as defined by 24 C.F.R. §135.5(m), the Agency and the Authority may approve payments in advance to the contractor or subcontractor qualifying as a "business concern located within the Section 3 covered project area" as defined by 24 C.F.R. §135.5(B) as it may from time to time be amended, for work to be performed by said contractor or subcontractor upon an affordable housing development if the Agency determines, on the basis of such information as the Agency may require, that said contractor or subcontractor would otherwise not be able to participate in said housing development by performance of said work; that contractor or subcontractor possesses the necessary skills to satisfactorily complete said work, and that said advance payment will not in any respect impair the security for any obligation to the Agency or the Authority.

29 VIC §940(b)(7)-302.        **Equal Housing Opportunity**

Any housing development assisted under the Program, shall be open for occupancy by all, regardless of race, sex, marital status, color, religion, national origin, sexual orientation, ancestry, or handicap.

29 VIC §940(b)(7)-303.        **Affirmative Marketing Program**

It shall be the policy of the Agency to achieve greater access to housing opportunities created by the programs assisted by the Agency or the Authority for all persons regardless of race, sex, marital status, color, religion, ancestry, sexual orientation, national origin or handicap. An Affirmative Fair Housing Marketing Plan (the "Plan") furthering this policy shall be submitted to the Agency by any Applicant who seeks participation in the Program.

Such plan shall satisfy the following requirements:

(a)        It shall contain an undertaking by the Applicant to rent or sell the units in the development in a manner consistent with giving notice of the availability of such units to all eligible persons in the housing market of the community irrespective of race, sex, marital status, color, religion, ancestry, national origin, sexual orientation, or handicap.

(b)        All advertising shall state "Financed by the Government of the United States Virgin Islands" and "Equal Housing Opportunity."

Page 25 of 44

APTIM00161

### JOINT RULES AND REGULATIONS
### FOR THE UNITED STATES VIRGIN ISLANDS
### LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM

The Agency may from time to time review the Plan and the Applicant's activities pursuant to the Plan and may require amendments to the Plan if it does not fully comply with the requirements of this section.

**Article 4:      Construction Contract Review**

29 VIC §940(b)(7)-400.      **Procedure**

Prior to its execution, each contract between an Applicant and a program contractor for the construction or rehabilitation of housing financed or otherwise assisted under the Program shall be submitted by the Applicant to the Agency for review and approval.

29 VIC §940(b)(7)-401.      **Employment of Apprentices**

(a)      Applicants of affordable housing developments the construction of which is financed or otherwise assisted under the Program shall agree to hire and train, on a part-time basis for the duration of the construction of the project, no fewer than eight (8) students enrolled in vocational education programs of the Virgin Islands; provided that at least two (2) students shall be chosen from each of the fields of plumbing, electrical work, carpentry and masonry. Applicants shall also participate in the Pre-Apprenticeship Construction Program sponsored by the Virgin Islands Department of Labor and the Agency.

(b)      The employment and training of each apprentice shall be in accordance with the provisions of any locally applicable apprenticeship standards and apprentice agreement under which the apprentice is training. Upon completion of construction of the project, the students will be issued certificates of participation in the Pre-Apprentice Construction Program.

### 29 VIC §945

**Article 5:      Rental Housing Standards and Procedures**

29 VIC §940(b)(7)-500.      **Selection of Tenants**

Each Applicant receiving a construction or mortgage loan commitment or other Program assistance for a rental housing development under the Act and these regulations shall include in the Affordable Housing Development Plan required under Section 208 hereof a "Resident Selection Plan." The Plan shall be submitted to and approved by the Agency.

The Plan shall:

(a)      Establish income limits for the rental of the designated affordable housing units within the rental housing development.

**Page 26 of 44**

APTIM00162

## JOINT RULES AND REGULATIONS
## FOR THE UNITED STATES VIRGIN ISLANDS
## LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM


(b)     Detail the manner in which the Applicant will give preference in the renting of such units to eligible tenants:

(1)     Displaced from housing by this affordable housing development;

(2)     Who are persons or families of low- and moderate-income and identified on lists prepared and maintained by the Agency under Section 212 hereof;

(3)     Who are disabled; and

(4)     Who have served in the Armed Forces of the United States, who are domiciled in the Virgin Islands and who were born in the Virgin Islands or who entered the Armed Forces from the Virgin Islands.

(c)     Within the classifications set forth in (b) above provide, unless this requirement is waived in writing by the Agency that not less than the percentage described in Section (201)(b) hereof of the units in the affordable housing development shall be rented to persons of very low-income, low-income or moderate-income, as applicable.

(d)     Shall provide that the Applicant will notify each person making an application to rent a unit within the rental housing development within ten (10) days from the date of such application, in writing of:

(1)     Whether the tenant is eligible to rent such unit;

(2)     Whether, based upon turnover history, if any, a dwelling unit for which the tenant is eligible will be available within six (6) months;

(3)     If the tenant is not eligible, a statement of the reasons for such lack of eligibility; and

(4)     The applicant's right to be placed on a waiting list for vacancies occurring in the affordable housing development, and notified by the Applicant of vacancies for which the applicant is an eligible tenant, subject to the rental priorities for the housing development approved by the Agency.

(e)     Require that a list of all applicants for tenancy within the affordable housing development be kept for a period of two years from the date the application is filed with the Applicant.

(f)     Explicitly provide that the Applicant shall not utilize status criteria (e.g., sexual preferences, marital status, dress and grooming standards) in determining tenant eligibility under

Page 27 of 44

**JOINT RULES AND REGULATIONS
FOR THE UNITED STATES VIRGIN ISLANDS
LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM**

the Plan.

29 VIC §940(b)(7)-501.       **Leases**

Each Applicant of a rental housing development shall submit to the Agency the form(s) of lease proposed by the Applicant to be used in renting all of the affordable housing units in the rental housing development. Such lease(s) shall be reviewed by the Agency, which shall require such modification in them prior to approval as may be necessary or appropriate in the circumstances, including modifications necessary to comply with applicable federal and local statutes or regulations. The Agency may develop a standard form of lease agreement which may be modified from time to time as appropriate.

In addition to the foregoing requirements any lease approved by the Agency shall:

(a)     Contain an explicit statement of the tenant's rights under 28 V.I.C., Chapter 31, Subchapter III, Sec. 831, et seq.

(b)     Provide that at least thirty (30) days before filing an application with the Agency for an increase in the maximum permissible rent or utility service charge to be paid by tenants occupying the designated percentage of affordable housing units in the rental housing development, the Applicant shall notify the tenants of the proposed rent and/or utility increases.

Copies of such notice shall be delivered personally or by mail to each tenant. The notice shall:

(1)     State the proposed date of which the application for increases is to be filed with the Agency;

(2)     Set forth the reasons for requesting the increases, the amount of the increases for each type of affordable housing unit in the rental housing development, and provide that any tenant or representative of the tenant may inspect any documents the Applicant intends to forward to the Agency in connection with its application at a designated place within the housing development during regular business hours of the Applicant; and

(3)     Provide that the Applicant shall meet at a designated place within the housing development with all interested tenants and their representatives at least ten (10) but not more than fifteen (15) days prior to submitting the application for such increases to the Agency and shall further state that written comments on the proposed increases may be submitted to the Agency by the tenants at the physical address of the Agency.

APTIM00164

### JOINT RULES AND REGULATIONS
### FOR THE UNITED STATES VIRGIN ISLANDS
### LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM

**Article 6:**     Homeownership Programs: Standards and Procedures

**29 VIC §940(b)(7)-600.**     **Homeownership Programs; Consistency with Agency "Home Mortgage Program."**

Owner-occupied housing development programs administered by the Agency may include single-family housing, single-family lease purchase program, condominium, town home units and homestead lot sales. To the maximum extent possible, such owner-occupied housing initiatives shall be consistent with the Agency's existing "Home Mortgage Program" authorized and implemented pursuant to Title 21 V.I.C. Chapter 2 and the Rules and Regulations of the Agency promulgated thereunder. Developers who participate in the Agency's "Home Mortgage Program" may submit Affordable Housing Development Plans to the Agency pursuant to and in accordance with Section 208 hereof.

**29 VIC §940(b)(7)-600.**     **Homeownership Programs**

The Agency administers several programs to provide mortgages for the construction and purchase of homes to first-time home buyers. They are as follows:

1. **Homestead**

   The Homestead Funding Source was established in 1953 by the Virgin Islands Government for the provision of a program for first-time home buyers to acquire homeownership. Funding of this Program is disbursed from appropriations made by the VI Legislature. The Homestead Loan Program provides residents with mortgage assistance to purchase or build a first home or to acquire land for the purpose of building a first home. The Program provides funding for existing home owners also to improve or repair their primary residence. Primary or secondary financing is available to qualified buyers.

| HOMESTEAD LOAN PROGRAM | | | | |
|---|---|---|---|---|
| Type | Number of Unit | Maximum | Term | Rate |
| Construction Program | 1 | $220,000 | 30 years | Shall not exceed 4% |
| Home Improvement | 1 | $40,000 | 10 years | Shall not exceed 4% |

Page 29 of 44

APTIM00165

### JOINT RULES AND REGULATIONS
### FOR THE UNITED STATES VIRGIN ISLANDS
### LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM

### 2. Veterans

The Veterans Loan Program was established in 1965 by the Virgin Islands Government for the provision of homeownership to first-time home buyers who are Veterans. Funding of this Program would be appropriated annually from the Internal Revenue matching fund for five years to be spent exclusively for the Veterans Housing Loan Program. In 1984, the law was amended to reduce the appropriation to $200,000.00 annually. Through this Program, the Agency provides a Home/Land Mortgage Program for Virgin Islands Veterans to purchase their first home.

| VETERANS LOAN PROGRAM | | | | |
|---|---|---|---|---|
| Type | Number of Unit | Maximum | Term | Rate |
| Construction/Purchase | 1 | $110,000 | 30 years | Shall not exceed 6% |
| Home Improvement | 1 | $40,000 | 10 years | Shall not exceed 4% |

### 3. Moderate-Income

Moderate-Income Funding Source was established in 1967 by the Virgin Islands Government for the provision of a mortgage program for first-time home buyers. These funds consist of monies appropriated by the Legislature, derived from proceeds of the gross receipts tax. Qualified applicants in the Territory are served through this Program.



MODERATE INCOME LOAN PROGRAM

Page 30 of 44

APTIM00166

### JOINT RULES AND REGULATIONS
### FOR THE UNITED STATES VIRGIN ISLANDS
### LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM

| Plus | Number of Unit | Maximum | Term | Rate |
|---|---|---|---|---|
| Condition Purchase | 1 | $110,000 | 30 years | Shall not exceed 6% |
| Home Improvement | 1 | $40,000 | 10 years | Shall not exceed 4% |

**FEDERAL PROGRAMS:**

4. **HOME Program**

The HOME Program is a grant program under the U.S. Department of Housing & Urban Development (HUD) which provides funds to support state and local affordable housing programs. The Program helps to expand the supply of decent, safe, sanitary and affordable housing for low- and very low-income families by providing grants to States and local government referred to as participating jurisdictions or "PJ's". The Territory receives an annual funding allocation based on a formula which is derived by the federal government. The Agency's administration of the HOME Program has primarily focused on supplying financial assistance to first-time home buyers. The Program provides grants and deferred low-interest loans to bridge the gap between the client's affordability and the purchase price. Eligible families can qualify for these low-interest loans and grants to help purchase or build a home. HOME funding also assists with the rehabilitation of owner-occupied units.

| HOME Loan Program | Number of Units | Maximum | Term | Rate |
|---|---|---|---|---|
| Construction Purchase | 1 | Equal to or less than primary lender with closing cost *(as applicable)* | Concurrent with term of primary lender | As low as 1% |

APTIM00167

**JOINT RULES AND REGULATIONS
FOR THE UNITED STATES VIRGIN ISLANDS
LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM**

29 VIC §940(b)(7)-601.        **Agency Loans for Affordable Housing Development**

The Agency may receive loans or advances from the Authority in order to finance loans or advances to Applicants as provided herein. Any loan or advance made to the Agency by the Authority shall be documented in intergovernmental loan agreements and secured as required by the Authority.

29 VIC §940(b)(7)-602.        **Sale of Owner-Occupied Housing Units**

Affordable housing units which are intended to be owner-occupied shall be sold to "eligible persons and families" within the meaning of the Agency's "Home Mortgage Program" and the Rules and Regulations of the Agency promulgated thereunder. Any program to provide owner-occupied housing units shall be consistent with the objectives of the Act and these regulations and shall be offered for sale as provided in Section 212 hereof.  To the maximum extent feasible, affordable owner-occupied housing units shall meet the priorities, requirements and objectives set forth in Section 201 hereof.

Each Affordable Housing Development Plan for an owner-occupied housing development shall include a marketing strategy which shall include the following (in addition to the other items set forth in Section 201 hereof, required to be submitted as part of Affordable Housing Development Plan under the Act and these regulations):

(a)        Establish income limits for the sale of the applicable percentage of affordable housing units required to be set-aside within owner-occupied housing developments for occupancy by persons and families of very low-income, low-income and moderate-income;

(b)        Incorporate an Agency-sponsored homeowner counseling and training program for prospective home buyers;

(c)        Detail the manner in which the Applicant will give preference in the sale of the applicable percentage of affordable housing units to persons or families:

(1)        Displaced from housing by this affordable housing development;

(2)        Who are persons or families of low- and moderate-income and identified on lists prepared and maintained by the Agency under Section 212 hereof;

(3)        Who are disabled; and

(4)        Who have served in the Armed Forces of the United States, who are domiciled in the Virgin Islands and who were born in the Virgin Islands or who entered the Armed Forces from the Virgin Islands;

APTIM00168

# JOINT RULES AND REGULATIONS
## FOR THE UNITED STATES VIRGIN ISLANDS
## LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM

(d)     Provide for the sale of owner-occupied housing units to the applicable percentage of very low-income, low-income or moderate-income persons and families specified in Section 201(b) hereof, except that the Agency shall not require an Applicant to develop owner-occupied housing for very low-income or low-income persons and families if the Agency determines that it is not economically feasible to do so.

29 VIC §940(b)(7)-602.1.     The Agency markets in the following manner to advertise its products and services to all first-time home buyers:
1.  Advertisements in the local newspapers;
2.  Video presentation on the local government access channel;
3.  Press releases;
4.  Newsletter to database of priority applicants;
5.  Email correspondence to government agencies (including the National Guard and Veterans' Administration) and priority applicants on available units;
6.  Mailings to other housing entities and other privately managed subsidized housing communities; and
7.  Open houses for all subdivisions.

29 VIC §940(b)(7)-602.2.     The Agency provides pre-purchase education, post purchase education and one-on-one counseling sessions to first-time home buyers and to existing homeowners. The following are the educational initiatives that are administered by the Authority.

The Home Buyers Education Program (HBEP) is an instructional guide for first-time home buyers to learn about the purchase process step-by-step. The HBEP provides 18 hours of structured training to first-time home buyers and involves classroom presentations by the Agency's staff and other community partners that are key players in the housing industry. The course is offered in modules and takes place over a nine-week period.

Financial Management Counseling is provided to all of the Agency's clients who are recipients of mortgage financing with the Agency. The objective of this counseling session is to give all new owners the necessary tools to maintain homes, manage present and future expenses and protect investments. This 1-2 hour session is conducted prior to loan closing with the goal being to ensure that the Borrower's homeownership experience is a successful one.

Community Education is a marketing and outreach activity designed to increase public awareness of the Agency's homeownership programs and opportunities, the Home Buyers Education Program and Housing Counseling Services.

Economic Education is a Financial Fitness Program that offers a variety of "hands-on" activities for participants. It is a critical piece of a comprehensive pre-and post-purchase Homeownership Education Program. This class provides the tools to help participants address

APTIM00169

### JOINT RULES AND REGULATIONS
### FOR THE UNITED STATES VIRGIN ISLANDS
### LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM

the "ABC's of Personal Finance" and other critical issues that would help achieve financial goals and maintain successful homeownership. These presentations are provided throughout the community and at the Authority's offices.

The Housing Counseling Program provides one-on-one counseling to first-time home buyers and to existing homeowners. Counselors assist first-time home buyers through individual sessions to guide them in resolving problems that prevent affordable mortgage financing and to make informed decisions to assist in achieving homeownership. The Agency also provides foreclosure prevention counseling to help homeowners who are delinquent on their mortgage payments and are at risk of foreclosure. Through counseling, loss mitigation options are explored and offered to families to keep them in their homes and preserve the stability in our neighborhoods.

The Agency utilizes a Priority System, which is a numerical system, to maintain a database that identifies eligible and ineligible applicants. The main benefit of this system is to identify applicants by mortgage readiness (MR), near-ready (NR), and applicants who require counseling (RC). This allows the Agency to offer products and services based on an applicant's eligibility.

- A mortgage-ready applicant is one who has successfully been prequalified for mortgage financing.

- A near-ready applicant is one who requires short term counseling (six months or less).

- An applicant who requires long-term counseling is one who is ineligible due to credit or budget concerns. Referred applicants can remain in counseling for six months or more. The duration of the counseling is based on the needs of the individual or family.

The Agency communicates quarterly with priority applicants who are mortgage-ready, semiannually for those that are near ready applicants, and annually with those who require long-term counseling. Mailings include newsletters, and post cards that encourage applicants to stay focused, continue saving, and maintain their readiness to purchase. All applicants receive the annual newsletter, that includes current information on the Agency; status of products and services; and financial management tips. Post cards are mailed to mortgage-ready and near ready applicants and they encourage the pursuit of homeownership and provides the opportunity to update contact information.

This listing is purged annually during the summer months. This will allow the Homeownership Division to maintain an updated pool of interested and eligible applicants. Letters are sent to all applicants soliciting updated contact information and confirming continuing interest in homeownership. Applicants will be given 30 days to update information

APTIM00170

**JOINT RULES AND REGULATIONS**
**FOR THE UNITED STATES VIRGIN ISLANDS**
**LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM**

by phone or mail. Applicants who fail to respond by phone or mail, will be withdrawn; however, files may be reactivated at anytime subject to a prequalification interview and reactivation fee.

The Agency provides a 25-percent set-aside for veterans in all home and land developments. The set-aside for land will be no more than 90 days after receipt of subdivision approval. The set-aside for homes will be for no more than 45 days after the receipt of a Certificate of Use and Occupancy. Outreach for all the Agency's available products are provided through communication with all the Veterans organizations in the Territory, through the Agency's priority listing and the local media. The Agency requires a fee for all applicants to obtain a priority number. This priority number affords an applicant an initial pre-qualification interview and registration to the Agency's Home Buyer Education Class. Veterans receive a 25 percent discount on this fee. The Agency requires that applicants have the capability of making an earnest money deposit for the purchase of homes and a 10 percent down-payment for the purchase of land. There is no required earnest deposit for veterans, for the purchase of land or homes through the Agency. Additionally, the Agency provides veterans with an additional 10 percent discount on the established price of land sold by the Agency.

29 VIC §940(b)(7)-603.      **Compliance with Applicable Law**

Affordable housing units which are intended to be owner-occupied shall be offered for sale to eligible families subject to and in compliance with all applicable federal and United States Virgin Islands laws, including, without limitation, all applicable federal income tax laws and regulations as applied to the United States Virgin Islands.

**Article 7:      Legislative Approval of Affordable Housing Developments**

29 VIC §940(b)(7)-700.      **Approval of Affordable Housing Plans**

The Agency shall submit, at a minimum of every three (3) years, an Affordable Housing Plan to the Committee on Government Services & Housing of the Legislature, pursuant to the requirements of Section 103a of Title 21 of the Virgin Islands Code. The Committee shall review the Affordable Housing Plan which shall include, but not be limited to, rental housing and single-family affordable housing and shall approve or disapprove each specific project addressed therein. The Plan shall be deemed approved on the 45th day after the date of submission of the Plan to the Committee, unless the Agency receives written notification of any disapproval by the Committee prior to the expiration of the forty-five (45) day period. Once approved as provided herein, a housing development shall not be included in subsequent Affordable Housing Plans.

29 VIC §940(b)(7)-701.      **Contents of Affordable Housing Plans**

The Affordable Housing Plan to be submitted by the Agency shall describe each housing development approved by the Board for development on real property owned by the Agency.

Page 35 of 44

APTIM00171

**JOINT RULES AND REGULATIONS**
**FOR THE UNITED STATES VIRGIN ISLANDS**
**LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM**

The information to be provided for each project shall include:

      (a)     Location of the housing development;

      (b)     Acreage involved;

      (c)     Number of dwelling units to be constructed, improved or rehabilitated;

      (d)     Target family income of the future tenants or purchasers of affordable housing units;

      (e)     Estimated cost of construction of the affordable housing units and associated infrastructure;

      (f)     Required government subsidies;

      (g)     Estimated date of commencement of construction; and incorporated as part of the housing development; and

      (h)     Ancillary non-housing facilities to be planned or incorporated as part of the housing developments.

**29 VIC §940(b)(7)-702.     Modification; Supplemental Affordable Housing Plans**

      (a)     The Agency shall submit modifications to the Affordable Housing Plan to the Committee on Government Services & Housing of the Legislature, when a material modification, change, alteration or substitution has been made to any housing development contained in a previously approved Affordable Housing Plan. The Agency shall determine what constitutes a material modification, change, alteration or substitution for purposes of this Section.

      (b)     The Agency shall submit Supplemental Affordable Housing Plans prepared in accordance with the requirements of Section 701 herein, for individual housing developments which were omitted from a previously approved Affordable Housing Plan by reason of error, incompleteness or for any other reason. Each Supplemental Affordable Housing Plan submitted and approved shall reference the specific Affordable Housing Plan previously approved by the Committee, and shall state the reason for its omission from the Affordable Housing Plan previously submitted and approved by the Committee. The Supplemental Affordable Housing Plan shall be approved.

**29 VIC §940(b)(7)-703.     Register**

      The Agency shall keep a register containing copies of each approved Affordable Housing Plan, and modification thereto, and each Supplemental Affordable Housing Plan, for public

APTIM00172

### JOINT RULES AND REGULATIONS
### FOR THE UNITED STATES VIRGIN ISLANDS
### LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM

inspection at its principal office.

**29 VIC §713e**

**Article 8:  Tax Incentives**

29 VIC §940(b)(7)-800.      **Applicability of Rules under Industrial Development Program**

Except where the context otherwise requires a different application, the rules and regulations applicable under the Industrial Development Program under Title 29, Chapter 12, with respect to the issuance of industrial development certificates, public hearings, Commissioner meetings, and action by the Commissioner, shall not be applicable in connection with the granting and administration of tax benefits under the Act. Every Applicant who applies to the Agency by submitting an Affordable Housing Development Plan for approval as a developer, builder, provider or sponsor of affordable housing units, must satisfy, and throughout the term of the applicable Affordable Housing Development Agreement, continue to satisfy all of the rules and regulations in this Article 8 in order to receive the exemption from taxes provided at Section 713e of Title 29 of the Virgin Islands Code.

29 VIC §940(b)(7)-801.      **Certificate of Compliance by Applicant**

The Applicant shall submit to the Agency, as part of the Affordable Housing Development Plan being submitted for approval, a certification which contains the following representations and information:

(a)      The total estimated construction cost of the affordable housing units comprising the housing development which are the subject of the Affordable Housing Development Plan;

(b)      The names and addresses of all contractors, subcontractors, materialmen, suppliers and vendors which will be providing labor, material or supplies to the subject project, with an estimated breakdown of costs to be allocated to each such entity;

(c)      Federal ID number of the Applicant and all Beneficiaries listed in Section 802(b) herein;

(d)      Agreement to hire and train, on a part-time basis for the duration of construction of the project, no fewer than eight (8) students enrolled in vocational education programs in the United States Virgin Islands or participating in the Pre-Apprenticeship Construction Program sponsored by the Virgin Islands Department of Labor and the Agency, two (2) students from each of the fields of plumbing, electrical, carpentry and masonry;

(e)      Agreement to give preference to contractors, subcontractors, trade contractors, materialmen, suppliers and vendors providing labor, material and supplies to the housing project,

Page 37 of 44

APTIM00173

**JOINT RULES AND REGULATIONS
FOR THE UNITED STATES VIRGIN ISLANDS
LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM**

who are Residents of the United States Virgin Islands;

(f)     Representation that the Applicant complies and will continue to comply with Section 934 of the U.S. Internal Revenue Code of 1986, as amended (26 U.S.C. §934);

(g)     Certification that neither the Applicant nor its principals, contractors, or sub-contractors is presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from participation in any federal or local program related to affordable housing in the Territory or any Federal department or agency.

(h)     Representation regarding whether the Applicant, or any one or more of its stockholders or partners have, or have had, any proprietary interest in any other business or project which is or was a beneficiary under the Act or the Industrial Development Program;

(i)     List of the major items of machinery and equipment utilized or to be utilized in the construction of the housing development, including, in the case of purchased machinery and equipment, the date(s) of acquisition and purchase price. In the case of leased machinery and equipment, the Applicant shall include the date(s) of acquisition, annual rent cost, length of lease, documentation attesting to the fair market value of the equipment, and a copy of the lease.

The Certification of Compliance to be submitted by the Applicant as herein provided shall be signed by an authorized officer or partner of the Applicant attesting to the truth, accuracy and completeness of the Certification and any documents submitted in support thereof. The Certification of Compliance may be in the form attached as Exhibit D hereto or such other form as may be approved by the Agency.

29 VIC §940(b)(7)-802.     **Issuance of Certificate of Tax Exemption**

The Agency shall review the Certificate of Compliance submitted by the Applicant to ensure compliance with these rules and regulations in its review of Affordable Housing Development Plans submitted by Applicants for approval. The Agency shall issue a Certificate of Tax Exemption in the forms attached hereto as Exhibits C-1 and C-2, to the Applicant and each Beneficiary, as appropriate, upon the satisfaction of the following conditions:

(a)     Execution by all necessary parties of an Affordable Housing Development Agreement pursuant to these rules and regulations; and

(b)     Approval by the Committee on Government Services & Housing of the Legislature of an Affordable Housing Plan which includes the housing development which is the subject of the applicable Affordable Housing Development Agreement executed under Section 802(a) herein.

The Certificate shall be signed by the Applicant, or each Beneficiary, as appropriate, and

APTIM00174

## JOINT RULES AND REGULATIONS
## FOR THE UNITED STATES VIRGIN ISLANDS
## LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM

by the Executive Director of the Agency, and shall be distributed to the Bureau of Internal Revenue, the U.S. Customs and Border Protection, the Economic Development Commission, the Office of the Lt. Governor, and the Virgin Islands Department of Labor.

**29 VIC §940(b)(7)-803.      Tax Exemptions**

Every Applicant and Beneficiary granted a Certificate under the Act and who continues to comply with all of the requirements of the Act and these rules and regulations shall be entitled to receive the tax exemptions and subsidies as follows:

(a)    100% exemption of gross receipts taxes, as further specified in Section 804 below;

(b)    100% exemption of excise taxes on building materials, articles, supplies, goods, merchandise, and tools manufactured or brought into the U.S. Virgin Islands on or about April 1, 1990 for the production of affordable housing, as specified in Section 805 below;

(c)    Exemption of all customs duties in excess of a one percent (1%) handling charge or such materials used in the production of affordable housing, as further specified in Section 806 below; and

(d)    100% exemption of the income taxes for the term of the applicable Affordable Housing Development Agreement, as further specified in Section 807 below.

**29 VIC §940(b)(7)-804.      Gross Receipts Tax Exemption**

An Applicant or Beneficiary awarded a Certificate by the Agency shall be entitled to an exemption from all gross receipts taxes related to receipts, cash or accrued, derived exclusively from or directly connected with the production of affordable housing units under the Act. The gross receipts tax exemption shall apply to the gross receipts of the affordable housing development for which a Certificate is granted, but not including the gross receipts of non-housing facilities or housing units that are not affordable housing units as determined by the Agency which are operated within the same housing development for which a Certificate is granted. Common areas shall be allocated between non-housing improvements, affordable housing improvements and non-affordable housing improvements. Only that portion of common areas attributable to the affordable housing units shall be exempt from gross receipts taxes.

**29 VIC §940(b)(7)-805.      Excise Tax Exemption**

An Applicant or Beneficiary awarded a Certificate by the Agency shall also be entitled to an exemption from all excise taxes on materials used exclusively in the production of affordable housing units. The excise tax exemption shall apply to all excise taxes on building materials, articles, goods, supplies, merchandise, appliances, tools, pipes, pumps, and similar items brought

APTIM00175

## JOINT RULES AND REGULATIONS
## FOR THE UNITED STATES VIRGIN ISLANDS
## LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM

into the United States Virgin Islands as necessary and exclusively for use in the construction, alteration, reconstruction or rehabilitation of affordable housing units with respect to which an Affordable Housing Development Agreement is in effect. The excise tax exemption shall not apply to (i) materials used in the production of housing units which are not affordable housing units, (ii) materials used in the construction of non-housing facilities and (iii) materials used for the construction of common areas allocable to non-housing facilities and units which are not affordable housing units. The excise tax exemption does not apply to materials related to the construction, reconstruction, alteration or rehabilitation of non-housing facilities located on the premises.

29 VIC §940(b)(7)-806.     **Custom Duties Reduction**

An Applicant or Beneficiary awarded a Certificate is further entitled to a reduction in customs duties payable with respect to items imported for the production of affordable housing. Notwithstanding any other law, materials, goods, tools, equipment and other similar articles imported into the United States Virgin Islands to be used exclusively for the production of affordable housing shall be imported into the United States Virgin Islands at a customs duty rate of one percent (1%). The customs duty reduction shall not apply to materials, goods, tools, equipment, articles and commodities used in the construction of non-housing facilities located on the premises with the affordable housing units. The custom duties subsidy similarly does not apply to materials used to produce housing units that are not affordable housing units under the Program nor shall it apply to customs duties attributable to materials used to construct common areas allocable to non-affordable housing units and materials used to construct common areas allocable to non-housing facilities.

29 VIC §940(b)(7)-807.     **Reduction of Income Taxes**

(a)     Each Applicant who is granted a Certificate is further entitled to have its income tax liability, for income derived from or effectively connected with the production of affordable housing, reduced on a current basis as provided in this Section. The income tax exemption available under paragraph (b) of §713e of Title 29 of the Virgin Islands Code, shall be structured as a reduction of income taxes payable to the Government of the United States Virgin Islands in connection with income derived: (1) from the construction, operation or management of affordable housing units under the Program; (2) from or effectively connected with the sale or rental of affordable housing units under the Program; (3) from the operation or management of such affordable housing during the period which it is not sold; or (4) where applicable, from the management of affordable rental property, provided that, in addition to the requirements of the Act, the requirements of Section 934 of the U.S. Internal Revenue Code of 1986, as amended, are met.

(b)     An Applicant shall be entitled to:

(1)     Reduce the amount of each payment of estimated income taxes
Page 40 of 44

APTIM00176

## JOINT RULES AND REGULATIONS
### FOR THE UNITED STATES VIRGIN ISLANDS
### LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM

attributable to the production of affordable housing as provided in paragraph (a) by one hundred percent (100%); and

(2)     Reduce the income tax liability attributable to the production of affordable housing as provided in paragraph (a) shown on the income tax return for the taxable year by one hundred percent (100%), for each of the years specified in the Certificate granted under the provisions of this Section. In the case of estimated income taxes, such reduction shall be prorated over the quarterly payments due, or constructively due by the Applicant, and in the case of the determination of income tax liability, by the entire amount of the subsidy thus constructively calculated.

(c)     The reduction of income tax liability on a current basis of, or the reduction of income taxes otherwise payable by, Applicants entitled to such reduction shall be applicable with respect to all of the computations, assessments, and collections of such income taxes, as provided by the Internal Revenue Code of 1986, as amended.

(d)     An individual whose permanent residence is in the United States Virgin Islands, a corporation which is organized under the laws of the United States Virgin Islands, or a corporation organized under the laws of the United States, or one of the States, territories or commonwealths thereof, whose principal office is located in the United States Virgin Islands, is presumed to continue to be permanently domiciled in the United States Virgin Islands for purposes of this Section, unless it is established that such residency or domicile has been superseded by a new residence or domicile.

(e)     In the computation of the income tax exemption, there shall not be considered as part of the base of the exemption the taxes paid into the Treasury of the United States Virgin Islands on any income of the Applicant which is derived from sources outside the United States Virgin Islands.

829 VIC §940(b)(7)-08.     **Regular Reports by Applicants and Beneficiaries**

After a Certificate has been issued to an Applicant or Beneficiary, the Applicant and each Beneficiary must regularly file the following with the Agency no later than July 15th of each year of applicability:

(a)     A copy of the annual report, required to be filed in the Office of the Lieutenant Governor, listing the names and addresses of all persons owning five percent (5%) or more of the stock of any corporate Applicant or Beneficiary and the percentage owned by each.

(b)     A copy of the quarterly unemployment Insurance report filed with the Department of Labor.

(c)     A certificate or affidavit of continuing program compliance in a form prepared by the Agency to the effect that the Applicant or Beneficiary is in compliance with its Affordable

Page 41 of 44

APTIM00177

**JOINT RULES AND REGULATIONS**
**FOR THE UNITED STATES VIRGIN ISLANDS**
**LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM**

Housing Development Agreement and the requirements of the Act and the rules and regulations thereunder.

29 VIC §940(b)(7)-809.        **Reports by Beneficiaries of Change in Ownership Stock**

A corporate Applicant or Beneficiary shall immediately notify the Agency, in writing, of any change in ownership of more than 20% of the voting stock of the corporation and of any change in ownership of the voting stock of the corporation which results in a change in majority control.

29 VIC §940(b)(7)-810.        **Grounds for Revocation, Suspension or Modification of**
**Certificates**

A Certificate granted pursuant to the Act may be revoked, suspended, or modified by the Agency on any of the following grounds:

(a)     The Applicant or Beneficiary has failed to maintain compliance with the requirements of the Act, these rules and regulations or its Certificate; or

(b)     In the case of a corporation, upon a finding submitted to the Agency by the Attorney General of the U.S. Virgin Islands that the corporation:

(1)     Has been dissolved; or

(2)     Has filed, or there has been filed against the corporation, a petition in bankruptcy which has been approved, provided, however, that the filing of a petition for reorganization under Chapter XI of the U.S. Bankruptcy Act shall state any Agency proceeding based solely on this Subsection, and/or commencement thereof, until an order to liquidate has been issued or a petition to convert has been filed pursuant to such Bankruptcy Act; or

(c)     The Applicant or Beneficiary has failed to file an annual report of ownership as required by Section 808; or

(d)     The Applicant or Beneficiary, or in the case of a corporation, an officer acting in behalf of the corporation, has given or offered, or caused to be given or offered, a bribe, or any money, property, or value of any kind, or any promise or agreement therefore, to a public officer, or to a person executing any of the functions of a public officer, or to a person elected, appointed or designated to thereafter execute the same, with intent to influence him with respect to any act, decision, vote, opinion or other proceedings, in the exercise of the powers or functions which he has or may have pertaining in any way to the Program. In addition to the fine and/or imprisonment provided by law for this offense, any benefit granted or obtained as a result of such act, decision, vote, opinion or other proceeding shall be void as to the briber and/or recoverable from the briber as the circumstances of the particular case may dictate.

Page 42 of 44

### JOINT RULES AND REGULATIONS
### FOR THE UNITED STATES VIRGIN ISLANDS
### LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM

(e)     The Applicant or Beneficiary failed to give notice that any of its principals, contractors, or subcontractors is presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from participation in any federal or local program related to affordable housing in the Territory or any Federal department or agency.

29 VIC §940(b)(7)-811.     **Investigation and Proceedings**

An investigation by the Agency shall be conducted before the Agency acts to revoke, suspend or modify a Certificate pursuant to these Rules and Regulations.

29 VIC §940(b)(7)-900.     **Separability.** If any clause, sentence, paragraph, section, subsection or part of these rules and regulations shall be adjudged by a court of competent jurisdiction to be invalid, such judgment shall not affect, impair or invalidate the remainder thereof, but shall be confined in its operation to the clause, sentence, paragraph, section, subsection or part thereof directly involved in the controversy in which such judgment shall have been rendered.

**SECTION II.**

By his signature hereon, the Governor of the Virgin Islands certifies, in accordance with the provisions of Title 3, Chapter 35, Section 938, Virgin Islands Code, that compelling circumstances and the public interest require that the Virgin Islands Rules and Regulations contained herein become effective on this __11th__ day of ____June____, 2014, without the lengthy delay of prior publication, and on which date they have been submitted to the Legislature pursuant to Title 3, Chapter 35, Section 913, Virgin Islands Code.

Pursuant to the provisions of Title 29, Chapter 16, Section 940(b) (7), Virgin Islands Code, the above Rules and Regulations are hereby promulgated.

Dated: ____June 11____, 2014.          Dated: _____June 11_____, 2014.

OFFICE OF MANAGEMENT AND          VIRGIN ISLANDS HOUSING FINANCE
BUDGET                                          AUTHORITY

BY: _____          BY: _____
Debra E. Gottlieb                                  Adrienne L. Williams
Chairperson, VIHFA Board of Directors          Executive Director

Page 43 of 44

**APTIM00179**

## JOINT RULES AND REGULATIONS
## FOR THE UNITED STATES VIRGIN ISLANDS
## LOW AND MODERATE INCOME AFFORDABLE HOUSING PROGRAM

Pursuant to the powers vested in me by Section 11 of the Revised Organic Act of 1954, and by Title 33, Section 913, Virgin Islands Code, the above Rules and Regulations are hereby approved.

Dated: _June 11, 2014_

John P. de Jongh, Jr.
Governor

Page 44 of 44

APTIM00180

# EXHIBIT C
## LABOR RATES

| Description | Hour | Rate | Comment |
|---|---|---|---|
| Corporate Project Sponsor | | ██████ | Max 8 hours/day |
| Site Project Sponsor | | ██████ | Max 8 hours/day |
| Project Manager | | ██████ | |
| Logistics Manager | | ██████ | |
| Deputy Project Manager | | ██████ | |
| Senior Construction Manager | | ██████ | |
| Purchasing/Procurement Manager | | ██████ | |
| Environmental Manager | | ██████ | |
| QC/CM Supervisor | | ██████ | |
| Construction Manager | | ██████ | |
| QC/CM Oversight | | ██████ | |
| Safety Manager | | ██████ | |
| Data/IT Manager | | ██████ | |
| Customer Service Manager | | ██████ | |
| Accounting Manager/Treasury | | ██████ | |
| Staffing Supervisor | | ██████ | |
| Data/IT Field Coordinator/WO Coordinator | | ██████ | |
| Customer Service Coordinator/Schedule | | ██████ | |
| Logistics Coordinator | | ██████ | |
| Project Controls Lead | | ██████ | |
| Safety Technician | | ██████ | |
| IT Liaison | | ██████ | |
| Project Controls | | ██████ | |
| Project Accountant | | ██████ | |
| Resource Manager | | ██████ | |
| Office Manager | | ██████ | |

APTIM00181

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

KEVONGH J. GRANT                                          )
                                                         )
              Plaintiff,                                 )        Case. No. 1:19-CV-0025
                                                         )
v.                                                       )
                                                         )
APTIM ENVIRONMENTAL AND                                  )
INFRASTRUCTURE, INC., WITT O'BRIEN'S, LLC,               )
ODEBRECHT CONSTRUCTION, INC., NATHAN                     )
McCANN, ANDRES McCANN, JOHN DOES, JANE                   )
DOES AND UNKNOWN CORPORATIONS                            )
                                                         )
              Defendants.                                )

# EXHIBIT 3

## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

KEVONGH J. GRANT,                           )
                                            )
                          Plaintiff,        )      **Civ. No. 1:19-CV-00025**
                                            )
        v.                                  )
                                            )
APTIM ENVIRONMENTAL AND                     )
INFRASTRUCTURE, INC., WITT                  )
O'BRIEN'S, LLC, ODEBRECHT                   )
CONSTRUCTION, INC., NATHAN                  )
McCANN, JOHN DOES, JANE DOES,               )
and UNKNOWN CORPORATIONS,                   )
                                            )
                          Defendants.       )
_____     )

### APTIM'S ANSWERS TO PLAINTIFF'S INTERROGATORIES

Defendant, Aptim Environmental & Infrastructure, LLC (fka Aptim Environmental & Infrastructure, Inc.) ("Aptim"), by and through its attorneys Dudley Newman Feuerzeig LLP, hereby responds pursuant to Fed. R. CIV. P. 26 and 33 to plaintiff Kevongh J. Grant's ("Grant") Interrogatories and states as follows:

### GENERAL OBJECTIONS

Aptim makes the following general objections to Grant's Interrogatories.  These general objections are incorporated into all of the responses to the Interrogatories and are not repeated after each request.

1.  Aptim objects to the Interrogatories to the extent it may impose obligations different from or in addition to those required under the Fed. Rules of Civil Procedure.

2.  Aptim's discovery, investigation, research, and preparation for trial of this matter have not been completed and are ongoing. Accordingly, Aptim 's responses to the Interrogatories are made without prejudice to its right to make any use of, or proffer at any hearing or at trial, subsequently discovered or acquired documents, knowledge or information, including, without limitation, documents, knowledge or information obtained in discovery in this action. If and as additional, non-privileged, responsive information or documents

*Grant v. O'Brien's et al.*
*Civ. No. 2019-CV-00025*
*Aptim's Responses to Plaintiff's Interrogatories*
*Page 2*

are discovered, these responses will be supplemented to the extent that supplementation may be required by the Fed. Rules of Civil Procedure.

3.  Aptim objects to the Interrogatories to the extent it may seek information or documents protected from discovery by the attorney-client privilege, and the work product doctrine, including information prepared in anticipation of litigation, or for trial, by or on behalf of Aptim or its representatives or relating to mental impressions, conclusions, opinions, or legal theories of his attorneys or representatives, or any other applicable privilege or doctrine under federal, state, or territorial statutory, constitutional or common law. These responses shall not include any information protected by such privileges or doctrine, and documents or information inadvertently produced which includes such privileged information shall not be deemed a waiver by Aptim of such privilege or doctrine.

4.  Aptim objects to the Interrogatories to the extent it seeks information or documents not in the possession, custody or control of Aptim on the ground that it would subject Aptim to undue burden, oppression and expense, and impose obligations not required by the Fed. Rules of Civil Procedure.

5.  Aptim objects to the Interrogatories as improper on the grounds and to the extent that it seeks information and documents concerning any matter that is irrelevant to the subject matter of this action, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to said general objections Aptim states as follows:

## PLAINTIFF'S PRELIMINARY STATEMENT

The following terms have the following meanings, unless the context requires otherwise:

a.  As used herein, the terms "you", "your", or "your-self" refer to the party to whom these Interrogatories are addressed, each of said party's agents, representatives, and attorneys, or other persons acting or purporting to act on said party's behalf.

*Grant v. O'Brien's et al.*
*Civ. No. 2019-CV-00025*
*Aptim's Responses to Plaintiff's Interrogatories*
*Page 3*

b.  As used herein, the term "representative" means any and all agents, employees, servants, officers, directors, attorneys, or other persons acting or purporting to act on behalf of the person in question or means the person in question is or has been an agent, employee, servant, officer, director, attorney or other person acting or purporting to act on behalf of another person.

c.  As used herein, the term "person" means any natural individual in any capacity whatsoever or any entity or organization, including divisions, departments and other units therein, and shall include, but not limited to a public or private corporation, insurance company, partnership, joint venture, voluntary or unincorporated association, organization, proprietorship, trust, estate, governmental agency, commission, bureau or department.

d.  As used herein, the term "document" is to be construed liberally as defined in Rule 34 and is to include any medium upon which intelligence or information can be recorded or retrieved, and includes, without limitation, the original and each copy regardless of origin and location, of any survey, advertisement, catalogue, book, pamphlet, periodical, letter, memorandum (including any memorandum or report of a communication, meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, calendar, telex, telegram, cable, report, record, contract, agreement, study, handwritten sketch, graph, index, list, tape, photograph, microfilm, data sheet or date processing card, or any other written, recorded, transcribed, punched, taped, filmed or graphic matter, however produced or reproduced, which is in your possession, custody or control or which was, but is no longer in your possession, custody or control.

e.  As used herein, the term "communication" means any oral or written utterance, notation, or statement of any nature whatsoever, by and whomsoever made, including but not limited to, correspondence, conversations, dialogues, discussions, interviews, consultations, agreements and other understandings between or among two or more persons.

f.  As used herein, the term "identification", "identify", or "identity", requests the following information when used in reference to:

1.  <u>a natural individual:</u>
    state individual's full name;
    residential and business address; and
    telephone numbers; and
    occupation.

2.  <u>a corporation:</u>
    state its full corporate name and any name under which it does business;
    its place of incorporation;
    the address of its principal place of business;
    the address of all of its offices; and
    the names and addresses of all of its officers and directors.

3.  <u>a business or other entity:</u>
    state full name or style under which the business is conducted;
    its business address(es);
    the types of business in which it is engaged; and

*Grant v. O'Brien's et al.*
*Civ. No. 2019-CV-00025*
*Aptim's Responses to Plaintiff's Interrogatories*
*Page 4*

the identity of person(s) who own, operate and control the business or entity.

4.  a document:
    state the nature of the document, (e.g., letter, or memorandum);
    state its title and number of pages;
    states its date;
    state the name(s) of its author(s);
    state the name of its recipient(s); and
    state its present location and custodian.

5.  a communication:
    if written, in whole or in part, identify the document(s) which refer to  or evidence the communication;
    if non written, identify the persons participating in the communication; and
    state the date and substance of the communication.

6.  an act, transaction, action, or instance:
    state the date and time when it occurred;
    state the nature, subject matter, and circumstances surrounding it; and
    identify all documents and communications resulting from, referring to, or otherwise connected with it.

7.  a text, book, journal, or learned treatise:
    state the name or title and author(s); and
    state the publisher, date of publication and edition.

8.  a lawsuit:
    state the full caption or style of the lawsuit including the court it was filed in, all parties thereto, the civil or criminal number and the date it was filed;
    state the nature of the lawsuit and include a descriptive summary of each cause of action therein; and
    state the nature of the ultimate resolution of the lawsuit including a detailed description of how the lawsuit's resolution impacted you or your insurance carrier.

9.  an injury:
    state the nature and extent of the injury (including the part of your body injured);
    state the date of the injury;
    state the manner in which it was received;
    state the identity of each doctor who examined or treated you;
    state a description of the examination or treatment you received for it (including the dates of such examination or treatment); and
    state whether the injury resulted in any current or permanent disability.

10. an illness:
    state the name of (or a description of) the illness;
    state the parts or portions or your body affected by the illness;
    state the date you first contracted or otherwise became aware of it;

session

*Grant v. O'Brien's et al.*
*Civ. No. 2019-CV-00025*
*Aptim's Responses to Plaintiff's Interrogatories*
*Page 5*

state whether you are still suffering from it (and if not, the date it terminated);
state the place you contracted it;
state the identity of each doctor who examined or treated it;
state a description of the examination or treatment you received for it (including the dates of such examination or treatments); and
state the degree of your recovery from the illness, including a description of any after-effects or current or permanent injuries or disabilities you have as a result of it.

11. <u>damages:</u>
   state the itemized dollar amount;
   state the identity of each creditor or payee; and
   state the nature of the goods obtained or services rendered by each expenditure.

12. <u>insurance:</u>
   state the identity of the insurer and the insured;
   state the policy and claim number;
   state the amounts paid by the policy (itemized), the payee, and the date of any claims or reports; and
   state the basis for each claim and the disposition of each claim.

13. <u>drugs or medication:</u>
   the generic name;
   the brand name;
   the dosage prescribed (both amount and times per day to be taken);
   the intended affect; and
   the actual affect it had on you.

g.    As used herein, the word "or" appearing in an interrogatory should not be read so as to eliminate any part of the interrogatory, but, whenever applicable, it should have the same meaning as the word "and". For example, an interrogatory stating "support or refer" should be read as "support and refer" it an answer that does both can be made.

h.    When an interrogatory requires you to "state the basis of" a particular claim, contention or allegation, state in your answer all facts upon which it is based and each and every legal theory that you think supports, refers to, or evidences such claim, contention or allegation.

i.    When an interrogatory requires you to state an "educational background", state the highest grade completed, schools attended, dates of attendance at each school, degrees attained, and identify any special educational work completed including, but not limited to, night classes, seminars or employer-sponsored education.

j.    As used herein, the words "plaintiff's injuries" refer to the injuries complained of in the Complaint in this action.

k.    As used herein, the words "employment history" refer to any and all work performed for the last ten years including, but not limited to, salaried or hourly positions, part-time work, and any type of sole proprietorship or other work wherein one is working for oneself or otherwise on one's own. For each instance of employment state:

*Grant v. O'Brien's et al.*
*Civ. No. 2019-CV-00025*
*Aptim's Responses to Plaintiff's Interrogatories*
*Page 6*

1.  by whom you were employed,
2.  the duties involved in the employment and the nature of the employment in general,
3.  the compensation received for such employment and whether said compensation was hourly or salaried,
4.  the date each such employment began and was terminated or otherwise came to an end, and
5.  your reason why each such employment was terminated or otherwise came to an end.

l.    used herein, the words "mental or physical defect or impairment" mean, in addition to the ordinary meaning of the words, any lessening of physical or mental function or activity resulting from the use or abuse of any drugs or alcohol, or any use of drugs or alcohol in any amount in the 24-hour period preceding the alleged accident or occurrence.

m.    When an interrogatory requires you to "state the medical grounds" for a particular act, diagnosis or course of treatment, state in your answer each and every fact and each and every medical theory that you think proves, supports or otherwise indicates that the act, diagnosis or course of treatment in question was a medically valid one, and identify at least one leading medical text, article or other written medical source which supports that contention.

n.    As used herein, the words "medical qualifications" refers to any and all education and experience which is relevant to the practice of medicine including, but not limited to, the identity and dates of medical schools attended, institutions where internships were served, places licensed to practice medicine, training in any medical specialties, membership in medical societies, hospitals associated with, teaching positions, articles authored, and any awards or honors bestowed during the person's medical career.

*Grant v. O'Brien's et al.*
*Civ. No. 2019-CV-00025*
*Aptim's Responses to Plaintiff's Interrogatories*
*Page 7*

**INTERROGATORY NO. 1:**

Please set forth your legal name or names in which your Articles of Incorporation are issued including the following:

**ANSWER:**

1. Date and Place of incorporation.

   Date of incorporation: 04/23/2002
   Place of incorporation: Louisiana, U.S.

2. Each person designated as an Incorporator in your Articles of Incorporation.

Aptim Environmental & Infrastructure, Inc. was converted to Aptim Environmental & Infrastructure, LLC on 12/31/2018. At that time, Joshua A. DeCuir, executed the Articles of Entity Conversion and Articles of Organization. Originally, Elizabeth Sherman Cox, executed the Articles of Incorporation as Incorporator in 2002.

3. Each Person who served as an Officer of Director at the time of the incident and each Officer or Director currently serving.

Directors and Officers on 11/01/2018:

| Name | Title |
|---|---|
| Bass, Wade | Director |
| Lowe, Bradley | Director |
| Bass, Wade | Secretary |
| DeCuir, Joshua A. | Assistant Secretary |
| Gibson, Jimmy | Executive Vice President & Chief Operations Officer |
| Hackenberg, Tyson | Vice President |
| Lowe, Bradley | Chief Financial Officer |
| Lowe, Bradley | Executive Vice President |
| Martin, Stephen R. | Vice President |
| Miller, Christopher | President |
| Seyedian, Sina P.E., PMP | Vice President |
| Weiss, Jon-Paul | Treasurer |

*Grant v. O'Brien's et al.*
*Civ. No. 2019-CV-00025*
*Aptim's Responses to Plaintiff's Interrogatories*
*Page 8*

Current Officers:

| Name | Title |
|---|---|
| Bass, Wade | Secretary |
| Deane, Jr. William | Vice President |
| Griffin, Kay | Treasurer |
| Kindler, Todd | Assistant Secretary |
| Lowe, Bradley | Chief Financial Officer |
| Lowe, Bradley | Executive Vice President |
| Phillips, Margaret | Assistant Secretary |
| Royston, Heather | President |
| Stockberger, Todd | Vice President |

4. The address of the corporation at the time of the incident and the current address, if different.

4171 Essen Lane, Baton Rouge, LA 70809

*Grant v. O'Brien's et al.*
*Civ. No. 2019-CV-00025*
*Aptim's Responses to Plaintiff's Interrogatories*
*Page 9*

## INTERROGATORY NO. 2:

Please set forth in detail the facts under which you sought to do business in the U.S. Virgin Islands as well as all facts giving rise to your ability to do business in the U.S. Virgin Islands.

## ANSWER:

Aptim objects to this interrogatory as vague, irrelevant and overbroad. Without waiving said objections Aptim states that it has a contractual relationship with the Government of the Virgin Islands related to the post 2017 hurricane Emergency Home Repair program. The Virgin Islands Housing Finance Authority (VIHFA) contracted with APTIM, among others, to administer the Emergency Home Repairs Virgin Islands Program (EHRVI) on behalf of VIHFA. Aptim secured the necessary governmental approvals as evidenced by Bates Nos. APTIM00182-00188 produced with Aptim's responses to plaintiff's requests for production of documents.

*Grant v. O'Brien's et al.*
*Civ. No. 2019-CV-00025*
*Aptim's Responses to Plaintiff's Interrogatories*
*Page 10*

## INTERROGATORY NO. 3:

Please set forth in detail all facts regarding your relationship with the Government of the Virgin Islands of the United States and, including but not limited to, any of its departments, instrumentalities, and autonomous or semi-autonomous agencies. Further detail the purposes and scopes of each business relationship.

## ANSWER:

Aptim objects to this interrogatory as vague and overbroad. Without waiving said objections Aptim states that it has a contractual relationship with the Government of the Virgin Islands related to the post 2017 hurricane Emergency Home Repair program. The Virgin Islands Housing Finance Authority (VIHFA) contracted with APTIM, among others, to administer the Emergency Home Repairs Virgin Islands Program (EHRVI) on behalf of VIHFA.

*Grant v. O'Brien's et al.*
*Civ. No. 2019-CV-00025*
*Aptim's Responses to Plaintiff's Interrogatories*
*Page 11*

## INTERROGATORY NO. 4:

Please set forth in detail all facts regarding hiring and retention practices.

## ANSWER:

Aptim objects to this interrogatory as vague, irrelevant and overbroad as Aptim operates in many jurisdictions within and without the continental United States and complies with all laws and regulations related to hiring and retention of employees per each jurisdiction's requirements. Subject to said objections and without waiving same Aptim states that it did not hire, employ, or retain Andrew McCann or Nathan McCann.

*Grant v. O'Brien's et al.*
*Civ. No. 2019-CV-00025*
*Aptim's Responses to Plaintiff's Interrogatories*
*Page 12*

## INTERROGATORY NO. 5:

Please set forth in detail all facts regarding your relationship with Nathan McCann and Andrew McCann, including, but not limited to, their duties, responsibilities, and scope of employment for work performed on your behalf.

**Answer:**

Aptim has no agency or employment relationship with either Andrew McCann or Nathan McCann. Both Andrew McCann and Nathan McCann completed the safety courses offered by Aptim on or about October 3, 2018 and, upon information and belief, were employed by Patriot Response Group, LLC and Navigation Construction, LLC.

*Grant v. O'Brien's et al.*
*Civ. No. 2019-CV-00025*
*Aptim's Responses to Plaintiff's Interrogatories*
*Page 13*

## INTERROGATORY NO. 6:

Please set forth in detail whether you, or anyone on your behalf, have conducted in any investigation into the incident involving the Plaintiff. Include in your response the following:

1. The name and contact information for each person participating in the investigation.

2. The nature, scope, and location where such investigation took place.

3. The name and contact information for each person contacted regarding any aspect of the investigation.

4. Whether the investigation, including the conclusions, were reduced to writing.

5. The name of the Custodian of the written investigation(s) and conclusion(s).

## ANSWER:

Aptim objects to this interrogatory as vague and overbroad. Further Aptim objects to this interrogatory as it seeks information protected by the attorney-client privilege and the attorney work product doctrine. Subject to said objections and without waiving same Aptim states that Darion Grainger, Aptim Safety Specialist, was contacted by the officer investigating the incident at issue and provided the officer documents showing that Andrew McCann and Nathan McCann were employed by Patriot Response Group, LLC and Navigation Construction, LLC.

*Grant v. O'Brien's et al.*
*Civ. No. 2019-CV-00025*
*Aptim's Responses to Plaintiff's Interrogatories*
*Page 14*

## INTERROGATORY NO. 7:

Please identify any person who has knowledge of any fact relating to the incident which is the subject of the Plaintiff's complaint. Include in your response the following:

1. The nature of any knowledge possessed by each person.
2. Any writings of each person who has knowledge any fact relating to the incident which is the subject of the Plaintiff's complaint.

## ANSWER:

Aptim has no independent knowledge or information regarding the incident at issue except as stated in response to interrogatory No. 6 above.

*Grant v. O'Brien's et al.*
*Civ. No. 2019-CV-00025*
*Aptim's Responses to Plaintiff's Interrogatories*
*Page 15*

## INTERROGATORY NO. 8:

Please set forth in detail all facts regarding your relationship with Witt O'Brien's, LLC., including but not limited to, any contracts, agreements, or memoranda of understanding, oral or in writing, as well as any joint projects.

## ANSWER:

Aptim objects to this interrogatory as vague and overbroad. Subject to said objections and without waiving same Aptim has no contractual relationship with Witt O'Brien's, LLC.

*Grant v. O'Brien's et al.*
*Civ. No. 2019-CV-00025*
*Aptim's Responses to Plaintiff's Interrogatories*
*Page 16*

## INTERROGATORY NO. 9:

With reference to each affirmative defense, you alleged in your answer to Plaintiff's complaint, please set forth all facts which support each affirmative defense.

## ANSWER:

Aptim objects to this interrogatory as vague and overbroad. Subject to said objections and without waiving same Aptim states that it did not have an employment or agency relationship with Andrew McCann or Nathan McCann, did not control Andrew McCann or Nathan McCann, and did not provide Andrew McCann or Nathan McCann with possession or use of any vehicles.

*Grant v. O'Brien's et al.*
*Civ. No. 2019-CV-00025*
*Aptim's Responses to Plaintiff's Interrogatories*
*Page 17*

## INTERROGATORY NO. 10:

With reference to each affirmative defense, you alleged in your answer to Plaintiff's complaint, please identify each person who has knowledge relating to any facts supporting each affirmative defense.

## ANSWER:

Aptim objects to this interrogatory as vague and overbroad. Subject to said objections and without waiving same Aptim states that it did not have an employment or agency relationship with Andrew McCann or Nathan McCann, did not control Andrew McCann or Nathan McCann, and did not provide Andrew McCann or Nathan McCann with possession or use of any vehicles. The Aptim employees that would have knowledge of these facts are Darian Grainger Aptim Safety Specialist and Don Janz.

*Grant v. O'Brien's et al.*
*Civ. No. 2019-CV-00025*
*Aptim's Responses to Plaintiff's Interrogatories*
*Page 18*

## INTERROGATORY NO. 11:

With reference to each affirmative defense, you alleged in your answer to Plaintiff's complaint, please identify each document relating to that defense.

## ANSWER:

Aptim objects to this interrogatory as vague and overbroad. Subject to said objections and without waiving same Aptim states that it did not have an employment or agency relationship with Andrew McCann or Nathan McCann, did not control Andrew McCann or Nathan McCann, and did not provide Andrew McCann or Nathan McCann with possession or use of any vehicles. The documents supporting Aptim's defenses are the badges for Andrew and Nathan McCann, the badging summary spreadsheet showing that Andrew and Nathan McCann were terminated by Patriot Response Group, LLC on October 16, 2018 and rehired by Navigation Construction, LLC on or about October 30, 2018. Aptim's job safety analysis show that neither Andrew McCann or Nathan McCann were on any EHRVI job site after being rehired by Navigation. The foregoing is based upon review of the Aptim badging procedures and logs.

*Grant v. O'Brien's et al.*
*Civ. No. 2019-CV-00025*
*Aptim's Responses to Plaintiff's Interrogatories*
*Page 19*

## INTERROGATORY NO. 12:

With reference to each denial set forth in your answer to Plaintiff's complaint, please set forth each fact upon which you base that denial.

## ANSWER:

Aptim objects to this interrogatory as vague and overbroad. Subject to said objections and without waiving same Aptim states that it did not have an employment or agency relationship with Andrew McCann or Nathan McCann, did not control Andrew McCann or Nathan McCann, and did not provide Andrew McCann or Nathan McCann with possession or use of any vehicles.

*Grant v. O'Brien's et al.*
*Civ. No. 2019-CV-00025*
*Aptim's Responses to Plaintiff's Interrogatories*
*Page 20*

## INTERROGATORY NO. 13:

With reference to each denial set forth in your answer to Plaintiff's complaint, please identify each person who has knowledge on any fact relating to each denial and any writing related to such person with knowledge of each denial.

## ANSWER:

Aptim objects to this interrogatory as vague and overbroad. Subject to said objections and without waiving same Aptim states see answer to interrogatory No. 6 above.

*Grant v. O'Brien's et al.*
*Civ. No. 2019-CV-00025*
*Aptim's Responses to Plaintiff's Interrogatories*
*Page 21*

## CERTIFICATION

**I HEREBY AFFIRM AND CERTIFY** that the answers to the above interrogatories are true and correct to the best of my knowledge and belief.

Aptim Environmental & Infrastructure, LLC

Dated: April 8, 2022

_____
Signature

Wade M. Bass
_____
Print Name

Secretary
_____
Title

*Grant v. O'Brien's et al.*
*Civ. No. 2019-CV-00025*
*Aptim's Responses to Plaintiff's Interrogatories*
*Page 22*

**Respectfully submitted,**

**DUDLEY NEWMAN FEUERZEIG LLP**

Dated: April 8, 2022          By:     /s/ Alex M. Moskowitz
                                      Alex M. Moskowitz (V.I. Bar No. 1072)
                                      Law House
                                      1000 Frederiksberg Gade
                                      P.O. Box 756
                                      St. Thomas, VI  00804-0756
                                      Telephone:  (340) 715-7753
                                      E-mail:  amoskowitz@dnfvi.com

                                      *Attorneys for APTIM*

### CERTIFICATE OF SERVICE

        I HEREBY CERTIFY that on this the 8th day of April, 2022, I served the foregoing "Aptim's Responses to Plaintiff's Interrogatories" upon the following:

        Emile A. Henderson III, Esq.
        emile@rossedwardspc.com
        613/39A Prince Street, Office #2
        Frederiksted, VI 00820

        Adam G. Christian, Esq.
        adam.christian@ogletreedeakins.com
        1336 Beltjen Rd., Suite 201
        St. Thomas, USVI 00802-4701

        Andrew C. Simpson, Esq.
        asimpson@coralbrief.com
        2191 Church Street, Ste. 5
        Christiansted, St. Croix
        U.S. Virgin Islands 00820

                                      /s/ Alex M. Moskowitz

*R:\DOCS\6678\6\PLDG\32R0821.DOCX*

**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

KEVONGH J. GRANT                                )
                                                )
              Plaintiff,                        )          **Case. No. 1:19-CV-0025**
v.                                              )
                                                )
APTIM ENVIRONMENTAL AND                         )
INFRASTRUCTURE, INC., WITT O'BRIEN'S, LLC,      )
ODEBRECHT CONSTRUCTION, INC., NATHAN            )
McCANN, ANDRES McCANN, JOHN DOES, JANE          )
DOES AND UNKNOWN CORPORATIONS                   )
                                                )
              Defendants.                       )
_____)

# EXHIBIT 4

**APTIM ENVIRONMENTAL & INFRASTRUCTURE, INC.**
**WORK AGREEMENT**

THIS AGREEMENT BY AND BETWEEN
Navigation Construction LLC
("CONTRACTOR"), and APTIM
ENVIRONMENTAL & INFRASTRUCTURE,
INC., ("APTIM"), a Louisiana Corporation, covers
all work, goods or services ordered by APTIM
during the term hereof. The parties contemplate
that Purchase Orders shall be issued pursuant to
this Agreement, setting forth the scope of
services to be performed, including the time
schedule, compensation and any other special
terms. The terms and conditions of this
Agreement shall apply to each such Purchase
Order and shall take precedence over any
conflicting or similar term and condition. NOW
THEREFORE, in consideration of the mutual
promises, covenants, and agreements contained
herein, the parties hereto intending to be legally
bound agree as follows:

**1. ITEMS SUPPLIED.** Except for items and
facilities furnished by APTIM as set forth on the
Purchase Order, CONTRACTOR shall furnish at
its expense all labor, services, equipment,
appliances, tools, facilities, and materials
necessary to commence and complete said work,
in a good, expeditious, and workmanlike manner.

**2. DELAY.** CONTRACTOR shall commence
and complete the work in accordance with the
schedule set forth in the Purchase Order and
shall defend, indemnify and hold APTIM harmless
for any additional expenses or damages arising
out of any delay or CONTRACTOR's inability to
proceed with the work.

**CONTRACT PRICE; BILLING.** Unless otherwise
provided herein, CONTRACTOR shall, every
thirty (30) days, prepare and submit to APTIM ,
an invoice for the work or services performed
during the prior month. The invoice shall clearly
reference the applicable Purchase Order
Number, and shall be in such form and supported
by such documentation as APTIM and its
Customer may reasonably require. If the work or
services is/are substantially complete, then within
(30) days thereof CONTRACTOR shall prepare
and APTIM shall receive the final invoice from
CONTRACTOR. APTIM shall have no obligation
to honor or pay any final invoice received after
such period of time. Payment terms are Pay
When Paid, + 10% retainage on all approved
invoices.

**4. RECORDKEEPING AND AUDIT.**
CONTRACTOR shall maintain true and correct
records in connection with each service
performed and all transactions related thereto
and shall retain all such records for twenty-four
(24) months after the end of the calendar year in
which the last service pursuant to this Agreement
was performed. APTIM, at its expense, may from
time to time during the term of this Agreement,
and at any time after the date the service(s) were
performed up to twelve (12) months after the
calendar year in which the last service(s) were
performed, audit all records of CONTRACTOR in
connection with all costs and expenses for which
it was invoiced. Upon completion of this audit, the
results shall be presented to CONTRACTOR,
and APTIM shall pay CONTRACTOR any
compensation due as shown by the audit. Any
amount as shown by the audit by which the total
payment by APTIM to CONTRACTOR exceeds
the amount due shall be returned to APTIM .

**5. COMPLIANCE WITH LAWS AND EQUAL
OPPORTUNITY.** CONTRACTOR agrees to
obtain and maintain all permits and licenses
required for CONTRACTOR's performance of
said work and to comply with all federal, state and
local laws (including labor laws), ordinances and
rules, regulations and orders of governmental
agencies applicable to said work.
CONTRACTOR shall comply with section 503 of
the Rehabilitation Act of 1973 (41 CFR 60-741.5)
as amended, and 38 USC 2012 of the Vietnam
Era Veterans Assistance Act of 1974 (41 CFR 60-
250.5), as amended and implementing
regulations. CONTRACTOR shall furnish from
time to time upon request, written proof of
licenses, permits and certifications required
under applicable law.

**6. USE OF PREMISES; WORK
PROCEDURE.** CONTRACTOR shall perform all
work in such manner as to cause a minimum of
interference with APTIM .'s operations or those of
APTIM .'s customer and the operations of other
contractors at the work site and shall take all
necessary precautions to protect the premises
and all persons and property thereon from
damage or injury. CONTRACTOR shall assume
responsibility for taking such precautions by
CONTRACTOR's and subcontractor's
employees, agents, licensees, permittees, and

APTIM00196

subcontractors, and shall comply with all health and safety practices, procedures and guidelines as the same shall be made known by APTIM or its customer, or required by applicable law. Upon completion of the work, CONTRACTOR shall leave the premises clean and free of all tools, equipment, waste materials, and rubbish used or generated by CONTRACTOR. All property used by CONTRACTOR in the performance of this Agreement but owned, furnished, charged to, or paid for by APTIM shall remain the property of APTIM, subject to removal or inspection by APTIM at any time without (i) cost or expense to APTIM or (ii) constituting a breach by APTIM CONTRACTOR understands and agrees APTIM assumes no liability as an owner, operator, manager or person in charge of all or any portion of a site, as arranger for the treatment, transportation, or disposal of any material, or as owner or possessor of any material, with respect to which CONTRACTOR is to perform work. CONTRACTOR also understands and agrees that APTIM did not choose the treatment, storage or disposal site for any material with respect to which CONTRACTOR is to perform work. CONTRACTOR agrees to take no action inconsistent with any of the foregoing including, without limitation, any action, which would subject itself or APTIM to any liability therefor.

## 7.   INDEMNIFICATION.

A. The CONTRACTOR agrees to the fullest extent permitted by law to defend, indemnify and hold harmless and hereby releases APTIM .'s Client, APTIM , its parent, subsidiary, and affiliated companies and its and their directors, officers, agents, other contractors, and employees from and against all liabilities, losses, damages, demands, claims, suits, fines, penalties, costs and expenses including reasonable legal fees and other expenses of investigation and litigation arising out of or related to CONTRACTOR's breach of this Agreement and/or for all injuries to and death of persons and for loss of or damage to property arising out of or related to services performed by CONTRACTOR, its agents, or employees, or subcontractors; except to the extent such liabilities or losses are attributable to the sole negligence or willful misconduct of APTIM, its agents, or employees.

B. In addition, CONTRACTOR agrees to the fullest extent permitted by law to defend, indemnify and hold harmless and hereby releases APTIM , its parent, subsidiary, and affiliated companies and its and their directors, officers, agents, other contactors, and employees against any and all liabilities, losses, claims, suits, costs and expenses arising from infringement or alleged infringement of intellectual property rights of others (including patents) covering apparatus, machinery, equipment, methods, processes, and compositions of any material installed and used by CONTRACTOR or its subcontractors in any and all operations under this Agreement.

## 8.   INSURANCE. CONTRACTOR shall, at all times while operations are conducted hereunder, maintain the following insurance coverages:

A. Workers' Compensation, providing statutory benefits and Employer's Liability Insurance covering the employees of the CONTRACTOR engaged in operations hereunder in compliance with the state having jurisdiction over each employee. The limit for Employer's Liability shall be $1,000,000 per occurrence.

B. Comprehensive General Liability Insurance including products, contractual liability and completed operations with a combined single limit per occurrence and annual aggregate of not less than $5,000,000 for bodily injury and property damage. Such policy shall be endorsed to cover liability of CONTRACTOR under Section 7 hereof.

C. Automobile Liability Insurance with a combined single limit of $1,000,000 per accident for bodily injury and property damage. This insurance shall provide coverage for any automobiles, including owned, hired and non-owned automobiles.

D. In the event that CONTRACTOR's work includes drilling, excavating or other intrusive activities, including environmental remediation work, Pollution Liability Insurance covering losses caused by pollution conditions that arise from the operations of the CONTRACTOR described under the scope of services of this Work Agreement. The coverage shall include bodily injury, property damage, cleanup costs and defense in the amount of $1,000,000 per loss.

E. Such other insurance and/or additional coverage amounts as deemed necessary by APTIM in any Purchase Order issued hereunder to cover the risks inherent to the work or services being performed by CONTRACTOR.

APTIM00197

F. All insurance policies shall waive all rights of subrogation against APTIM The insurance policies provided for in B , C, D, and E above shall name APTIM as an additional insured, shall be primary as to any other valid insurance available to APTIM , and shall contain a standard cross-liability endorsement or severability of interests clause.

G. Certificates evidencing the required insurance coverage (including the coverage required by Section 22 hereof) and endorsements shall be delivered to APTIM on APTIM 's then standard forms prior to commencement of work and shall provide that any material change in or cancellation of any policy(ies) under which such certificates are issued shall not be valid as respects APTIM until APTIM has received thirty (30) days prior written notice of such change or cancellation. Such insurance shall also provide that APTIM shall be an additional insured for two (2) years following completion of CONTRACTOR's work.

**9.   BOND.** APTIM reserves the right to demand that the CONTRACTOR furnish to APTIM , at any time during the term of this Agreement, a surety bond(s) issued by a company satisfactory to APTIM authorized to do surety business in the state where the work is to be done or materials are to be furnished on forms approved by APTIM and guaranteeing that the CONTRACTOR will perform all of its obligations under this Agreement and will pay for all work and materials received in conjunction therewith.

**10.  INDEPENDENT   CONTRACTOR.**  It   is expressly understood that CONTRACTOR is an independent CONTRACTOR and that neither it nor its employees or subcontractors or their respective employees are servants, agents or employees of APTIM The actual performance and superintendence of all work hereunder shall be by CONTRACTOR, and under the control and direction of CONTRACTOR as to the details of the work; provided, however, APTIM , being interested in the results to be obtained, is authorized to designate a representative or representatives, who shall at all times have access to the location where the work is to be performed for the purposes of observing and inspecting same, and provided further that such work shall be performed in accordance with this Agreement.

**11.  LIENS.** CONTRACTOR shall neither file nor permit to be filed or imposed any laborer's, materialmen's, mechanics, or other lien with respect to the work to be performed or material furnished or on any part of the property on which work is performed hereunder and hereby waives any right to file or cause such a lien to be filed. In the event any claim has been asserted against CONTRACTOR, APTIM or its customer, or any lien has been filed with respect to the work, further payment shall not become due until all such claims or liens have been satisfied, released and/or discharged of record without cost or expense to APTIM APTIM may, in default of CONTRACTOR's obligation to do so, procure the release, satisfaction and discharge of any such claim or lien, and deduct all costs and expenses incurred in so doing from any money due or to become due hereunder; or if final payment has been made, CONTRACTOR shall reimburse APTIM for all monies paid to discharge any such claim or lien, including the cost and expense thereof. Without limiting the application of the foregoing in any way, if CONTRACTOR has not received payment by virtue of the application of Section 3, herein for a period of twelve (12) months after the normal due date for such CONTRACTOR invoice, and that the reason for such non-payment by APTIM 's customer is directly and solely related to matters unrelated to CONTRACTOR's       performance,       then CONTRACTOR shall have the same rights of lien against the customer's property, as APTIM would have, and no greater.

**12.  CHANGE   ORDERS.**  APTIM may order changes, modifications, deletions, and extra work by issuance of written change orders to the Purchase   Order   from   time   to   time. CONTRACTOR shall make no change in the work without the prior receipt of a written change order, and CONTRACTOR shall not be entitled to compensation for any extra work performed unless prior to commencing said work APTIM has issued a written change order designating the nature of the work and the amount of additional compensation to be paid therefor.

In the event of a deletion of the work, the contract price shall be reduced by a fair and reasonable valuation. In the event of an increase in the work, the contract price shall be increased by a fair and reasonable valuation based upon the original contract rates. If the parties are unable to agree upon the amount of credit or amount of increase, CONTRACTOR shall continue to perform in any

APTIM00198

event, and the dispute shall be submitted to binding arbitration. APTIM shall not be responsible for any reimbursement of lost profits or value of a bargain for any decreases or deletions in the work from the original order.

**13. DEFAULT.** If CONTRACTOR shall become insolvent, or if insolvency, receivership or bankruptcy proceedings shall be commenced by or against CONTRACTOR, or if CONTRACTOR shall make an assignment for the benefit of creditors, or if CONTRACTOR shall materially default in its performance of any provision of this Agreement, then APTIM and CONTRACTOR shall have the following rights, obligations and duties:

A. APTIM , without prejudice to any other right or remedy, may terminate this Agreement forthwith on written notice to CONTRACTOR.

B. CONTRACTOR shall, if requested by APTIM in writing, withdraw from the premises and assign to APTIM such of CONTRACTOR's subcontracts as APTIM may request and remove such materials, equipment, tools and instruments used by CONTRACTOR in the performance of the work as APTIM may direct.

C. APTIM shall have the right, either with or without using CONTRACTOR's materials, equipment, tools and instruments, to complete the work itself or with or through third parties.

D. APTIM shall be entitled to withhold the payment of any further sums due to CONTRACTOR under this Agreement, except such final balance as may be due pursuant to the following paragraph.

E. Upon final completion of the work, APTIM shall determine the amount, if any, of damages suffered by APTIM, the amount to which CONTRACTOR is entitled for its performance of the work up to the date of such termination and the amount, with due regard to the circumstances of termination, sufficient to equitably compensate CONTRACTOR for the use of CONTRACTOR's materials, equipment, tools and instruments; and upon such determination, APTIM shall pay the net amount which may be due, if any, in accordance with such determination.

**14. GUARANTY.** CONTRACTOR guarantees that all work and services performed are in accordance with accepted standards and practices applicable to CONTRACTOR. CONTRACTOR also guarantees that all equipment and materials furnished pursuant to this Agreement against defects in construction and/or workmanship for a period of one (1) year following completion of its work and acceptance by APTIM , except where a longer guaranty is provided by a supplier or manufacturer of such equipment or required pursuant to the terms of any agreement entered between APTIM and the customer of APTIM relating to the work performed. If requested by APTIM , CONTRACTOR shall replace or repair any equipment provided or defective work performed. In the event CONTRACTOR fails to diligently proceed to cure the nonconformity, APTIM may do so and all costs incurred shall be for CONTRACTOR's account. Any purchase order issued pursuant to this agreement shall be expressly conditioned on the inclusion of all express and implied warranties and all remedies under the uniform commercial code.

**15. ASSIGNMENT;    SUBCONTRACTING.** CONTRACTOR shall not assign this Agreement or subcontract the whole or any part of any work performed hereunder, without APTIM 's prior written consent.

**16. EFFECT ON PRIOR AGREEMENTS.** This Agreement consists of this APTIM Environmental & Infrastructure, Inc. Work Agreement, the Purchase Orders issued thereunder incorporating, the terms and conditions of this Agreement, the Special Terms attached to the Purchase Order, and any other attachment as may be required to complete the work or services to be performed by the CONTRACTOR hereunder. The Special Terms shall include the terms and conditions of the applicable agreement between APTIM and its customer (the "Prime Agreement"), other than any provision regarding payment for work or services. Unless otherwise provided herein, the CONTRACTOR hereby agrees, notwithstanding anything to the contrary, to strictly comply in all respects with such Special Terms, and in the event of a conflict between such Special Terms and this Agreement, the provision imposing the greater obligation on the CONTRACTOR shall prevail. This Agreement shall in all respects supersede any prior Work Agreement heretofore executed by and between APTIM and CONTRACTOR relating to work or services to be performed by CONTRACTOR in connection with APTIM 's operations.

APTIM00199

**17. TERM; TERMINATION.** This Agreement shall be in effect for one calendar year from the date of execution by APTIM, and shall continue from year to year thereafter; provided either party may terminate this Agreement at any time, with or without cause, upon thirty (30) days prior written notice to the other. APTIM may terminate at any time, with or without cause in whole or in part, an agreed upon Purchase Order; provided, however, that if APTIM terminates without cause, it shall compensate CONTRACTOR for all duly authorized work performed and reasonable costs incurred prior to the actual receipt of notice.

**18. CONFIDENTIALITY;     INTELLECTUAL PROPERTY.** The CONTRACTOR shall not use for other than performance of the Work, or disclose to any third party, any information concerning this Agreement, the work performed, or any data or information received by CONTRACTOR pursuant hereto, except as herein specified without first obtaining the prior written consent of APTIM APTIM shall own all intellectual property developed by CONTRACTOR during the term hereof and arising out of the performance of the services.

**19. LIMITATION OF LIABILITY. IN NO EVENT SHALL APTIM 's CLIENT, APTIM , INCLUDING APTIM 's INSURERS, DIRECTORS, OFFICERS, AFFILIATES, PARENT COMPANIES, OR EMPLOYEES BE LIABLE FOR ANY INCIDENTAL, INDIRECT, IMPACT OR CONSEQUENTIAL DAMAGES OR, IN THE CUMULATIVE AGGREGATE, FOR ANY DAMAGES IN EXCESS OF THE COMPENSATION TO BE PAID BY APTIM UNDER THE PARTICULAR PURCHASE ORDER INVOLVED OR SUCH MINIMUM AMOUNT AS IS PERMITTED BY LAW, IF ANY.**

**20. DELIVERY.** Time is of the essence to APTIM Tender of goods or services shall be made in the manner and on the date specified on the Purchase Order.

**21. EXCUSABLE DELAY.** Neither party shall be liable for damages for delay in delivery or performance arising out of causes beyond its control and without its fault or negligence, including but not limited to, Acts of God or the public enemy, Acts of the government in either its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, embargoes, and unusually severe weather. CONTRACTOR will notify APTIM in writing ten

(10) days after the beginning of any such cause, which would affect its performance.

**22. RISK OF LOSS.** CONTRACTOR shall bear all risk of loss, theft, damage, or destruction to (1) the items covered by this Agreement and/or (2) the items covered by any Purchase Order issued to CONTRACTOR, (3) CONTRACTOR's equipment, appliances, tools, facilities and materials necessary to commence and complete the work or on APTIM 's property. CONTRACTOR will at all times carry insurance insuring against such destruction in the face amount, but not less than the replacement value of said items.

**23. TAXES.** Except for sales and use tax, the price for each item covered by this Agreement is inclusive of any other taxes, fees, excises, and/or changes which are now or may hereafter be imposed (whether by federal, state, municipal, or other local public authority) with respect to the manufacture and sale of such items, any services to be rendered by CONTRACTOR hereunder, or the Purchase Order itself. CONTRACTOR shall separately state on its invoice the amount of the sales or use tax applicable to the sale of the items or services covered by this Agreement.

**24. WITHHOLDING OF PAYMENTS OR RETENTION.** Notwithstanding anything to the contrary herein contained, APTIM shall have the right, without any duty, to withhold from any payments due or to become due the CONTRACTOR such amounts as APTIM , in its sole discretion, deems necessary to protect APTIM 's interests with respect to (i) any indebtedness owed by the CONTRACTOR to APTIM on this or any other contract; (ii) any defective work not remedied or any defective materials not removed and replaced; (iii) any third-party claims filed or reasonable evidence indicating probable filing of any such claims; (iv) any Liens in favor of any workers, suppliers of material, or laborers; (v) a claimed failure of the CONTRACTOR to make any payments to its Subcontractors, Suppliers, or laborers; (vi) reasonable doubt that the work can be completed for the unpaid balance of the Contract Price; (vii) reasonable indication that the work will not be completed within the Contract Schedule; (viii) unsatisfactory or untimely prosecution of the work by the CONTRACTOR; (ix) any failure of the CONTRACTOR to comply with this Agreement or Purchase Order or the Attachments thereto; (x) any loss, penalty, damage or attorney's fees

APTIM00200

associated with the CONTRACTOR or the work; (xi) the negligence or willful misconduct of the CONTRACTOR or any of its Representatives, Subcontractors, or Suppliers, or any other person or entity directly or indirectly employed by any of them to perform or furnish any of the work or anyone for whose acts or omissions any of them may be liable; and/or (xii) any set off to which APTIM is legally entitled. Any withholding or retention under this provision will also comply with applicable terms of any U. S. Government contract or subcontract, which applies to performance of work pursuant to this agreement.

**25. DISPUTES.** In the event of any dispute between the CONTRACTOR and APTIM due to any conduct of the Owner, Principal, or Client or involving the Contract Documents, CONTRACTOR shall be bound to any disputes procedure to which the APTIM is bound under the Contract Documents and to any decision rendered thereunder, provided that the CONTRACTOR is given notice that such dispute procedure has been demanded by any party, whether or not CONTRACTOR elects to participate in such procedure. CONTRACTOR shall bear the burden of proving its claims and refuting claims made against it through APTIM by Owner, Principal, or Client and shall bear all of its costs, expenses and attorney's fees in connection therewith. Any dispute between the CONTRACTOR and APTIM arising out of this Work Agreement or breach thereof, but not involving the Owner, Principal or Client, or Contract Documents, may, at the option of APTIM , be submitted to arbitration in accordance with the Construction Industry Rules of the American Arbitration Association in New Orleans, LA.. Any arbitration proceeding instituted under this section or under any disputes procedure in the Contract Documents may be consolidated at the option of APTIM with any other arbitration proceeding then or thereafter pending between APTIM and any other person if the respective arbitrations arise out of common questions of fact or law. The decision of the arbitrator(s) shall be final and binding upon the parties and a judgment upon any award rendered may be entered in any court of competent jurisdiction.

**26. GOVERNING LAW.** This Agreement shall be governed by and interpreted pursuant to the rules and laws of the State of Louisiana without regard to its conflict of law provision.

**27. INTERPRETATION AND SEVERABILITY.** Each provision of this Agreement is severable from the others. Should any provision of this Agreement be found invalid or unenforceable, such provision shall be ineffective only to the extent required by law, without invalidating the remainder of such provision or the remainder of this Agreement. Further, to the extent permitted by law, any provision found invalid or unenforceable shall be deemed automatically redrawn to the extent necessary to render it valid and enforceable.

**28. ENTIRE AGREEMENT.** The terms and conditions set forth herein, including the Purchase Order, Special Terms, and any other attachments thereto constitute the entire understanding of the parties relating to the provision of services by CONTRACTOR to APTIM and shall be incorporated in all work orders and authorizations unless otherwise so stated therein. Any CONTRACTOR initiated modifications or revision of any provisions hereof or any additional provisions contained in any purchase order, acknowledgment or other form of the CONTRACTOR is hereby expressly objected to by APTIM and shall not operate to modify the Agreement, and APTIM 's agreement hereto is expressly conditioned on and limited to the provisions hereof. Nothing in this Agreement shall create any relationship between, or confer any benefit upon, any person other than APTIM and the CONTRACTOR executing this Agreement. This Agreement may be amended only by a written instrument signed by both parties.

**29. ATTORNEY FEES.** Further, in any litigation or arbitration, the Prevailing Party shall be entitled to receive, as part of any award or judgment, eighty percent (80%) of its reasonable attorneys' fees and costs incurred in handling the dispute. For these purposes, the "Prevailing Party" shall be the party who obtains a litigation or arbitration result more favorable to it than its last formal written offer (made at least twenty (20) calendar days prior to the formal trial or hearing) to settle such litigation or arbitration.

**30. ADDITIONAL PROVISIONS APPLICABLE UNDER U.S. GOVERNMENT CONTRACTS OR SUBCONTRACTS.** If this Agreement or any Purchase Order covers work under a contract between APTIM and any agency, agent or prime CONTRACTOR of the United States Government, the additional provisions throughout this Article are made a part hereof, and shall apply to this agreement and/or any Purchase Orders issued pursuant hereto.

APTIM00201

## 30.1 DEFINITIONS

As used throughout these provisions, the following terms shall have the meanings set forth below:

1.1 "Government" means the United States of America and its agencies or agents.

1.2 "CONTRACTOR" and "SUB-CONTRACTOR" shall have the same meaning.

1.3 "Client" means the Government Agency, Agent, or Subcontractor with whom APTIM has executed a contract.

1.4 "Client Contract" means the prime contract between APTIM and its client.

## 30.2 GOVERNMENT AUDIT RIGHTS

Any agency of the Government, which is afforded audit rights under the Client Contract, shall be entitled to the same rights under this Work Agreement.

## 30.3 INDEMNIFICATION

CONTRACTOR shall defend, indemnify, and hold harmless APTIM and Client, its and their respective affiliates, parent companies, directors, officers, employees and agents, to the full extent permitted by applicable law, from and against any and all claims, damages, demands, suits, actions, judgments, liabilities, defaults, or costs and expenses, including court costs and attorney's fees, arising directly or indirectly out of or related to CONTRACTOR's performance hereunder related to the following:

(a) Any assertion that any costs, price, or fee included in or incurred under the Client Contract or this Work Agreement should or will be reduced as a result of, or arising out of facts attributable to, cost or pricing data furnished or required to be furnished by CONTRACTOR which was not complete, accurate, or current.

(b) A violation by CONTRACTOR or any applicable local, state, or federal law, rule or regulation.

(c) Any penalty or fine incurred or assessed which is caused by CONTRACTOR, its employees, agents, suppliers, subcontractors, or consultants.

(d) Any failure by CONTRACTOR to provide any reasonably required certification or supporting information required hereunder or under applicable laws and regulations.

(e) The provision by CONTRACTOR of any false or erroneous certification or supporting information required hereunder or under applicable laws and regulations.

(f) Any false claims by CONTRACTOR under this Subcontract, or any misrepresentation of facts, or fraud, under or in connection with appeals made under the article entitled "Applicable Laws and Disputes."

Any liabilities incurred shall not be deemed or considered "allowable costs" for purposes of this Work Agreement.

## 30.4 PUBLIC DISCLOSURES

CONTRACTOR shall make no public announcements or disclosures relative to information contained in or developed under this Work Agreement except as authorized in writing by the APTIM .

## 30.5 APPLICABLE LAWS AND DISPUTES WITH U.S. GOVERNMENT

If a decision or a question is issued by an authorized representative of the Client under the Client Contract and the decision relates to this Work Agreement, said decision, if binding upon APTIM under the Client Contract, shall also be binding upon the CONTRACTOR with respect to this Work Agreement. However, if CONTRACTOR is affected by such decision, and if APTIM elects not to appeal such decision under the "Disputes" clause of the Client Contract, APTIM shall notify CONTRACTOR. After receipt of such notice by CONTRACTOR, if CONTRACTOR submits a timely written request to APTIM to appeal such decision, APTIM will appeal at CONTRACTOR's cost and expense.

For any appeals or claims to be submitted in excess of $50,000, CONTRACTOR shall certify to APTIM , as to its portion of the claim that: (i) the claim is made in good faith; (ii) the supporting data is accurate to the best of CONTRACTOR's knowledge and belief; and (iii) the amount requested accurately reflects the Work Agreement adjustment for which CONTRACTOR believes the Client is liable.

If any such appeal is denied or otherwise decided adversely to CONTRACTOR's interest, or if CONTRACTOR is otherwise affected by any decision made by any representative of the Client on any question of fact and/or law arising under the Client Contract which is also related to this Work Agreement, from which an appeal under the "Disputes" clause in the Client Contract is not available, said decision, if binding upon APTIM

under the Client Contract, shall in turn be binding upon APTIM and CONTRACTOR with respect to such questions as it relates to this Work Agreement; provided, however, if CONTRACTOR is adversely affected by any such decision, and if APTIM elects not to bring suit against the Client with respect to such decision, APTIM shall notify CONTRACTOR.

If CONTRACTOR submits a timely written request to APTIM to bring suit against the Client, APTIM shall initiate such suit. If APTIM brings suit against the Client with respect to any such decision, whether at its election or at CONTRACTOR's request, a final judgment in any such suit, if binding upon APTIM under the Client Contract, shall in turn be binding upon APTIM and CONTRACTOR with respect to the question decided as it relates to this Work Agreement.

If any such appeal is taken or brought by APTIM , whether at its election or at CONTRACTOR's request, CONTRACTOR shall assist APTIM in its prosecution thereof to the extent CONTRACTOR's interest may be affected. To the extent requested by APTIM , CONTRACTOR shall prosecute for APTIM any appeal or suit taken or brought at CONTRACTOR's request and, in such event, APTIM shall assist CONTRACTOR in every reasonable manner.

All costs and expenses incurred by CONTRACTOR and APTIM in prosecuting any appeal or suit taken or brought at CONTRACTOR's request shall be paid by CONTRACTOR.

If as a result of any decision or judgment which is binding upon CONTRACTOR and APTIM , APTIM is unable to obtain reimbursement from the Client under the Client Contract, or is required to refund or credit to the Client any amount with respect to any item of cost or fee for which APTIM paid CONTRACTOR, CONTRACTOR shall, on demand, promptly repay such amount to APTIM , together with applicable interest and penalties (if any).

The rights and obligations herein shall survive completion and final payment under this Work Agreement.

Pending the resolution of any dispute, CONTRACTOR shall proceed as directed by APTIM in writing.

**30.6 CLIENT CONTRACT PROVISIONS**
The provisions of the attached Applicable Client Contract Clauses shall apply to this Work Agreement. In interpreting these provisions, the appropriate modifications to make such provisions applicable in all respects to this Work Agreement shall be deemed to have been made and the CONTRACTOR assumes toward APTIM under this Work Agreement all such obligations and duties as Company assumes toward the Client and the government under such provisions.

**31. RIGHTS CUMULATIVE; WAIVER OF TERMS AND CONDITIONS; SURVIVAL.** All of APTIM 's rights and remedies are cumulative with and non-exclusive of any and all rights and remedies available hereunder, at law, or otherwise. The failure of APTIM in any one or more instances to enforce one or more of the terms or conditions of this Agreement or to exercise any right or privilege in this Agreement or the waiver by APTIM of any breach of the terms or conditions of this Agreement shall not be construed as thereafter waiving any such or other terms, conditions, rights, or privileges, and the same shall continue and remain in force and effect as if no such failure to enforce has occurred. The terms and conditions of this Agreement shall survive the termination of this Agreement.

**32. NOTICES.** Any notices required or permitted to be sent may be delivered personally, or by telegram, overnight courier service or certified mail return receipt requested to the addresses set forth below or such other address as either party may designate by written notice to the other.

IN WITNESS WHEREOF, CONTRACTOR and APTIM agree to the foregoing **(INCLUDING THE LIMITATION ON LIABILITY IN SECTION 19)** and have caused this Agreement to be executed by their respective duly authorized representatives as of the date set forth below.

APTIM00203

Executed this ___11th___ day of __October__,
2018

**CONTRACTOR**

Navigation Construction

By: _____

Name:_____Mark Curran_____

Title:_____Presiden_____

Address:_____252 Peters_____

_____St. Croix, USVI_____


**APTIM ENVIRONMENTAL & INFRASTRUCTURE, INC.**

By: _____Jonathon Hunt_____

Name: ___Jonathon Hunt_____

Title: ___Subcontract Administrator_____

Address:___4171 Essen Lane_____

_____Baton Rouge, LA 70809_____

APTIM00204

**EXHIBIT A**
**TO APTIM ENVIRONMENTAL & INFRASTRUCTURE, INC.**
**WORK AGREEMENT**

**I.     AFFIRMATIVE ACTION/EQUAL OPPORTUNITY**

A.     The equal opportunity clause prescribed by Executive Order 11246, as amended by Executive Order 11375, as implemented in Title 41 CFR, Section 60-1.4 is incorporated herein by specific reference and is applicable to orders amounting to $10,000 or more.

B.     The affirmative action clause prescribed by the Vietnam Era Readjustment Assistance Act of 1974 and set forth in Title 41 CFR, Section 60-250.4 relating to the affirmative action program for disabled veterans and veterans of the Vietnam Era is incorporated herein by specific reference.

C.     The minority business enterprise's requirements of Executive Order 11625 are incorporated herein by specific reference.

D.     The affirmative action clause prescribed by Executive Order 11758 and set forth in Title 41 CFR, Section 60-741.4 relating to the affirmative action program for the handicapped is incorporated herein by specific reference.

**II.    CERTIFICATIONS**

A.     OCCUPATIONAL SAFETY AND HEALTH ACT

Contractor shall observe and comply with the Federal Occupational Safety and health Act of 1970 and with all safety and health standards promulgated by the Secretary of Labor under authority therefore, and with all applicable state occupational safety and health laws and regulations. Contractor and any subcontractor hereunder shall not require any laborer or mechanic employed in the performance of the contract to work in surroundings or under working conditions which are unsanitary, hazardous, or dangerous to his health and safety. This provision shall also be included in any contracts with subcontractors.

B.     AFFIRMATIVE ACTION PLAN

If Contractor has 50 or more employees and the contracts of Sale are in an amount of $50,000 or more, the Contractor may be required under Section 60-1.40 of Title 41 CFR to develop a written affirmative action compliance program for each of its establishments. If the Contractor is so required, it agrees to do so within 120 days from the commencement of a contract and maintain such program until such time as it is no longer required by law or regulation.

**III.   PROHIBITION OF SEGREGATED FACILITIES (FEB 1999)**

A.     *SEGREGATED FACILITIES,* as used in this clause, means any waiting rooms, work areas, rest rooms and wash rooms, restaurants and other eating areas, time clocks, locker rooms and other storage or dressing areas, parking lots, drinking fountains, recreation or entertainment areas, transportation, and housing facilities provided for employees, that are segregated by explicit directive or are in fact segregated on the basis of race, color, religion, sex, or national origin because of written or oral policies or employees custom. The term does not include separate or single user rest rooms or necessary dressing or sleeping areas provided to assure privacy between the sexes.

B.     The Contractor agrees that it does not and will not maintain or provide for its employees any segregated facilities at any of its establishments, and that it does not and will not permit its employees to perform their services at any location under its control where segregated facilities are maintained. The Contractor agrees that a breach of this clause is a violation of the Equal Opportunity clause in this contract.

C.     This clause shall be included in every subcontract and purchase order that is subject to the Equal Opportunity clause of this contract.

APTIM00205

**EXHIBIT B**
**TO APTIM ENVIRONMENTAL & INFRASTRUCTURE, INC.**
**WORK AGREEMENT**

Additional Provisions Applicable to Electronic and Purchasing Card Transactions

**1.0    DEFINITIONS:**

1.1    Electronic Transaction - Any transaction between Contractor and APTIM Environmental & Infrastructure, Inc., f/k/a Shaw Environmental, Inc., (APTIM)which is completed through an email, fax, web application, phone or Internet.

1.2    Electronic Signature - An electronic sound, symbol, or process, attached to or logically associated with a contract or other record and executed or adopted by a person (or entity) with the authority and intent to sign the record.

1.3    APTIM Electronic Signature - A signature transmitted electronically of the individual Buyer or Authorized Agent who is duly authorized to so act on a Purchase Order, other Contract or Subcontract document originating from an APTIM source system, computer, web, fax, or server. Said Signature shall be in a secure format that is password protected.

**2.0    USE OF ELECTRONIC TRANSACTIONS**

2.1    The parties agree that certain business conducted between the parties may be via an Electronic Transaction. In those circumstances, the APTIM Work Agreement terms and conditions shall apply to each such transaction, including but not limited to electronically transmitted purchase orders, contracts, agreements, subcontracts or authorized Purchasing Card Transactions.

2.2    The parties agree to be bound by the contracts, purchase orders, agreements, or subcontracts with the transmission of an Electronic Signature and such signature shall attest to the validity of the documents so executed. APTIM's Electronic Signature shall be in accordance with the definition and format as described in 1.4 above. CONTRACTOR's Electronic Signature need only meet the requirements of the definition of 1.2 above, unless otherwise provided herein.

**IN WITNESS WHEREOF, CONTRACTOR and APTIM ENVIRONMENTAL & INFRASTRUCTURE, INC. agree to the foregoing and have caused these Addendums to be executed by their respective duly authorized representatives as of the date set forth below.**

APTIM ENVIRONMENTAL & INFRASTRUCTURE, INC.

By: *Jonathon Hunt*

Name: Jonathon Hunt

Title: Subcontract Administrator

Date: 10/11/18

CONTRACTOR

Navigation Construction

By: _____

Name: Mark Curran

Title: President

Date: 10/11/2018

APTIM00206

**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| KEVONGH J. GRANT | ) | |
| | ) | |
| Plaintiff, | ) | **Case. No. 1:19-CV-0025** |
| v. | ) | |
| | ) | |
| APTIM ENVIRONMENTAL AND | ) | |
| INFRASTRUCTURE, INC., WITT O'BRIEN'S, LLC, | ) | |
| ODEBRECHT CONSTRUCTION, INC., NATHAN | ) | |
| McCANN, ANDRES McCANN, JOHN DOES, JANE | ) | |
| DOES AND UNKNOWN CORPORATIONS | ) | |
| | ) | |
| _____ Defendants. _____ | ) | |

# EXHIBIT 5

**UNITED STATES VIRGIN ISLANDS UNIFORM CRASH REPORT**

Agency Number: STX   Agency Case Number: 18A09162   Page 01 of 06

**UNITED STATES VIRGIN ISLANDS POLICE DEPARTMENT - ST. CROIX**

Agency Name

G1. County: 01   G2. Status Code: ○ C  ◉ P  ○ U

### 05. Officer Time

| G3. Reported Date (MM/DD/YYYY) | G4. Reported Time (2400) | Dispatch Time (2400) | Arrival Time (2400) | G5. Vehicles | G7. Killed | G8. Injured |
|---|---|---|---|---|---|---|
| 11 / 01 / 2018 | 0136 | 0139 | 0144 | 02 | 00 | 01 |

G9. Address Number: _____   G10. Street Name: PEARL ROAD

G11. Hwy/County Road #: 62   G12. Traffic Flow Direction: ○ N  ○ E  ○ S  ◉ W

G13. Int.: ○ Y  ○ N   G14. Distance: ____   ○ F ○ M   G15. Direction: ○ N ○ E ○ S ○ W

G16. Intersecting Street Name: HOPE ROAD   G17. Int. Hwy/County Road #: 68

G18. City Name: CHRISTIANSTED

G19. Latitude: N 17 43.488   G20. Longitude: W 064 44.092

### G21. First Harmful Event

**Crash with OMV in road:**
- ○ Rear and slow or stop
- ○ Rear end turn
- ○ Left turn same roadway
- ○ Left turn cross traffic
- ○ Right turn cross traffic
- ○ Head on
- ○ Sideswipe
- ○ Angle
- ◉ Hit and run

**Non-Crash in Road:**
- ○ Overturn
- ○ Jackknife
- ○ Fell from vehicle
- ○ Other

**Crash of MV in road with:**
- ○ Pedestrian
- ○ Parked Vehicle
- ○ Bicyclist
- ○ Horse
- ○ Animal (other than horse)

**Fixed Object:**
- ○ Bridge/Culvert
- ○ Embankment/Ditch/Curb
- ○ Guardrail/Median Barrier
- ○ Tree
- ○ Utility pole/light support
- ○ Other fixed object
- ○ Sign Post
- ○ Signal standard

**Non-fixed Object:**
- ○ Building/Other Structure
- ○ Maint. Equip. - Not Moving
- ○ Maint. Equip. - Moving
- ○ Other non-fixed object

### G22. Crash Location
- ◉ Roadway
- ○ Off-Roadway
- ○ Median
- ○ Roadside
- ○ Shoulder
- ○ Parking Lot
- ○ Gore

### G23. Intersection Type
- ○ None
- ◉ Four-way Inter
- ○ T - Intersection
- ○ Crossover
- ○ Driveway
- ○ Five-point or more
- ○ Off Ramp
- ○ On Ramp
- ○ Path/Trail
- ○ Traffic Circle/Round
- ○ Y - Intersection

### G24. Roadway System
- ○ Town Street
- ◉ V.I. State Highway
- ○ Fed. Highway
- ○ Public Road
- ○ Parking Lot/Private Drive
- ○ Off Road
- ○ State Park

### G25. Light Condition
- ○ Daylight
- ○ Dark-Lit
- ○ Dark-Unlit
- ○ Dawn
- ○ Dusk

### G26. Road Condition
- ○ Dry
- ○ Wet
- ○ Water
- ○ Sand/Mud/Dirt/Oil/Gravel
- ○ Ice
- ○ Slush
- ○ Snow

### G27. Weather Condition (2)
- ☑ Clear
- ☐ Rain
- ☐ Cloudy
- ☐ High winds
- ☐ Blown Debris
- ☐ Fog/Smog/Smoke
- ☐ Sleet/Hail
- ☐ Snow

### G28. Workzone Relationship
- ◉ Not Workzone Related
- ○ Within Construction Zone
- ○ Advance Warning Area

### G29. Workzone Type (2)
- ☑ None
- ☐ Intermittent or Moving Work
- ☐ Lane Closure
- ☐ Lane Shift/Crossover
- ☐ Shoulder/Median Work
- ☐ Utility

### WITNESS(ES)

| G30. First Name | M | Last Name | G38. First Name | M | Last Name |
|---|---|---|---|---|---|
| DYLAN | | ISNER | | | |

G31. Address: PETERS REST APTS.   G32. Phone Number: 3216936081   G39. Address: _____   G40. Phone Number: _____

G33. City: CHRISTIANSTED   G34. State: VI   G35. Zip Code: _____   G41. City: _____   G42. State: _____   G43. Zip Code: _____

G36. Sex ◉ M ○ F   G37. Date of Birth: __/__/__   G44. Sex ○ M ○ F   G45. Date of Birth: __/__/__

G46. Badge Number: 3277   G47. Investigating Officer Name (Please Print): Rashid Iles   G48. Officer Signature: *Rashid Iles*

G49. Reviewing Badge Number: 3058   G50. Reviewing Officer Initials: BA   G51. Photos Taken: ◉ Y ○ N   G52. Photographer and Badge #: DET. RASHID ILES 3277

HWYSVIUCR07

| VIUCR Diagram/Narrative | | | | | — | 1 | 8 | A | 0 | 9 | 1 | 6 | 2 | | | | Page | 0 | 2 | of | 0 | 6 |



**N1. Collision Diagram**

STOP

Cool Out Bar

Legend

V = Vehicle

= Point of Impact

= Utility Pole

D = Driver

V2

**N2. Collision Narrative**

SEE ATTACHED FORM

NOV 19 2018

HWYSVIUCR07 (p.2)

**VIUCR Person/Occupant**

VO. Veh # | P0. Person #: | Agency Number: 0 1 0 1 | Agency Case Number: 1 8 A 0 9 1 6 2 | (Page) 0 3 | of | 0 6

**P1. Person Type:** ◉ Driver   ○ Pedestrian   ○ Bicyclist   ○ Skater   ○ Other non-motorist   ○ Hit and Run Driver   ○ LE

**P2. License #:** C-030000081212

**P3. State:** V I   **P4. CDL?** ○ N ○ Y   **P5. DOB (MM/DD/YYYY):** 0 8 / 3 0 / 1 9 9 8

**P6. First Name:** KEVONGH   **M:** J   **Last Name:** GRANT

**P7. Address:** 10 C MARS HILL   **P8. Phone Number:** 340 2011210

**P9. City:** FREDERIKSTED   **P10. State:** V I   **P11. Zip Code:** 00840

P12. DL Status:
○ Valid   ○ Suspended - DUI
◉ No License   ○ Learner Permit
○ Expired   ○ Improper DL
○ Suspended   ○ Other

**P22. Safety Equip. (1):**
☑ Shoulder & Lap Belt
☐ None
☐ Lap Belt
☐ Automated Restraint
☐ Shoulder Belt
☐ Child Safety Seat
☐ Helmet

**P24. Injury Type:**
○ None
○ Complaint of Pain
○ Moderate
○ Life Threatening
○ Killed
○ Not
○ Partially
○ Totally

**P23. Ejection:**

P25.

**P26. Extricated:** ◉ N   ○ Y

**P26. Sex:** ◉ M   ○ F

**P27. Race:** ◉ White   ○ Hispanic   ○ Black   ○ Other

**P28. Position:** ◉ Left   ○ Center   ○ Right

**P29. Airbag:**
◉ Deployed - Front   ○ Not Deployed
○ Deployed - Side   ○ No Airbag
○ Deployed - Both

**P19. Condition:**
☑ No Defects Apparent   ○ Obviously Intoxicated
○ Unknown   ○ Physical Impairment
○ Hit and Run   ○ Affected by Exhaust Fumes
○ Driving - Not Impaired   ○ Using Drugs - Impaired
○ Drinking - Impaired   ○ Using Drugs - Not Impaired
○ Fell Asleep/Fainted/Fatigue   ○ Pending Lab Results

P20. Non-Motorist Action:
○ Unknown   ○ Pushing vehicle
○ Entering/Crossing Roadway   ○ Approaching/leaving vehicle
○ Walking/running/playing/cycling   ○ Playing/working on vehicle
○ Working   ○ Standing

P16:
○ Y ... 1
◉ N
○ P ... 2

**P17. EMS Agency Code:** S T X   **P18. Medical Facility Code:** J F L H

**P21. Contributing Circumstance (1):**
☑ No Apparent Improper Driving
☐ Failed to Yield Right of Way
☐ Failed to Maintain Safe Distance
☐ Speed Too Fast For Conditions
☐ Driving Under The Influence
☐ Animal on Roadway
☐ Faulty Equipment
☐ Exceeded Lawful Speed
☐ Improper Passing/Overtaking

☐ Made Improper Turn
☐ Right of Center
☐ Failure to keep proper lane/Run off road
☐ Avoidance
☐ Drove on Wrong Side of Road
☐ Fatigued/Asleep
☐ Illegally Crossing Median
☐ Improper Lane Change
☐ Lying and/or illegally in roadway

☐ Not Visible (Dark Clothing)
☐ Operating Defective Equipment
☐ Passed Stop Sign
☐ Pedestrian Actions
☐ Ran Red Light
☐ Roadway Defects
☐ Visibility Obstructed
☐ Improper Reversing
☐ See Crash Description

**P30. Type:**
◉ None   ☐ Serum
☐ Blood   ☐ Urine
☐ Breath   ☐ SFST's

**P31. Status:**
◉ None given   ○ Test given
○ Test refused   ○ Test given, pending
○ Arrested

**P32. Result:**

**Drug Test Information**

**P33. Type:**
◉ None   ○ Serum
○ Blood   ○ Urine

**P34. Status:**
◉ None given   ○ Test given, pending
○ Test refused   ○ Test given

---

**Occupant**

**00. Vehicle #:**   **01. First Name:**   **M:**   **Last Name:**

**02. Address** Same as Driver #   **03. Address:**

**04. City:**   **05. State:**   Unborn Child ☐

**06. Position:**
○ Front-Driver   ○ 3rd-middle
○ Front-Middle   ○ 3rd-right
○ Front-right   ○ Sleeper of Truck Cab
○ 2nd-left   ○ Encl. Pass./Cargo Area
○ 2nd-middle   ○ Unencl. Pass./Cargo Area
○ 2nd-right   ○ Riding on Exterior
○ 3rd-left   ○ Towed Vhcl./Trailer

**07. Safety Equip. (1):**
☐ Shoulder and Lap Belt
☐ None
☐ Lap Belt
☐ Automated Restraint
☐ Shoulder Belt
☐ Child Safety Seat
☐ Helmet

**08. Sex:** ○ M   ○ F

**09. Race:** ○ White   ○ Hispanic   ○ Black   ○ Other

**010. Age:**

**011. Extricated:** ○ M   ○ N   ○ Y   ○ Y

**012. Ejection:**
○ Not
○ Partially
○ Totally

**013. Injury Type:**
○ None   ○ Life Threatening
○ Complaint of Pain
○ Moderate   ○ Killed

**014. Airbag:**
○ Deployed - Front   ○ Not Deployed
○ Deployed - Side   ○ No Airbag
○ Deployed - Both

**015. Agent:** ○ Not Transported   ○ Police   ○ Medic   ○ EMS   ○ Private Vehicle

**016. EMS Agency Code:**   **017. Medical Facility Code:**

---

**Occupant**

**00. Vehicle #:**   **01. First Name:**   **M:**   **Last Name:**

**02. Address** Same as Driver #   **03. Address:**

**04. City:**   **05. State:**   Unborn Child ☐

**06. Position:**
○ Front-Driver   ○ 3rd-middle
○ Front-Middle   ○ 3rd-right
○ Front-right   ○ Sleeper of Truck Cab
○ 2nd-left   ○ Encl. Pass./Cargo Area
○ 2nd-middle   ○ Unencl. Pass./Cargo Area
○ 2nd-right   ○ Riding on Exterior
○ 3rd-left   ○ Towed Vhcl./Trailer

**07. Safety Equip. (1):**
☐ Shoulder and Lap Belt
☐ None
☐ Lap Belt
☐ Automated Restraint
☐ Shoulder Belt
☐ Child Safety Seat
☐ Helmet

**08. Sex:** ○ M   ○ F

**09. Race:** ○ White   ○ Hispanic   ○ Black   ○ Other

**010. Age:**

**011. Extricated:** ○ M   ○ N   ○ Y   ○ Y

**012. Ejection:**
○ Not
○ Partially
○ Totally

**013. Injury Type:**
○ None   ○ Life Threatening
○ Complaint of Pain
○ Moderate   ○ Killed

**014. Airbag:**
○ Deployed - Front   ○ Not Deployed
○ Deployed - Side   ○ No Airbag
○ Deployed - Both

**015. Agent:** ○ Not Transported   ○ Police   ○ Medic   ○ EMS   ○ Private Vehicle

**016. EMS Agency Code:**   **017. Medical Facility Code:**

HWYSVIUCR07A

## VIUCR Vehicle

| V0. Vehicle #: | V1. Total Occupants | Agency Number | Agency Case Number |
|---|---|---|---|
| 0 1 | 0 1 | | 1 8 A 0 9 1 6 2 |

Page 0 4 of 0 6

| V2. State | V3. Year | V4. License Plate Number |
|---|---|---|
| V I | 2 0 1 9 | C F C - 6 6 8 |

**Owner Information**

Same as Driver ☐

V12. Owner Name: **ANTHONY GRANT**

| V5. Make | V6. Model Year |
|---|---|
| C H E V Y | 2 0 0 6 |

V13. Address: **10C MARS HILL**

| V7. Vehicle Model | V8. Vehicle Color |
|---|---|
| S I L V E R A D O | T A N |

| V14. City | V15. State | V16. Zip Code |
|---|---|---|
| FREDERIKSTED | V I | 00840 |

V9. Damage: ● Heavy ○ Light ○ None

| V10. Speed Zone | V11. Est. Speed |
|---|---|
| 2 0 | |

V36. VIN: 3 G C E C 1 4 X 0 6 G 1 4 8 3 3 9

V19. No Proof of Insurance ☐

V17. Insurance Company Name: **CARLTON WILLIAMS ASS**

V18. Policy Number: **1123178000461**

### V20. Sequence of Events

**Collision w/ Person, Vehicle/Non-fixed Object** (cols 2, 4)
- Animal
- Bicyclist
- Maintenance Equip.
- Moving Vehicle
- Parked Vehicle
- Pedestrian
- Slowing Vehicle
- Stopped Vehicle in Road

**Non-Collision** (cols 2, 4)
- Cargo Loss/Shift
- Crossover
- Equipment Failure
- Fell/Jump from Vehicle
- Fire/Explosion
- Immersion
- Jackknife
- Median/Centerline
- Thrown/Falling Object
- Off roadway/Left
- Off roadway/Right
- Overturn/Rollover
- Unit Separation
- Over Correcting/Steering

**Collision w/ Fixed Object** (cols 2, 4)
- Attenuator/Cushion
- Bridge Structure
- Culvert
- Curb
- Ditch
- Embankment
- Fence
- Guardrail
- Mailbox
- Median Barrier
- Post/Pole/Support
- Tree
- Other Fixed Object

### V21. Vehicle Action
- ● Going Straight
- ○ Making Left Turn
- ○ Stopped
- ○ Slow/Stop in Road
- ○ Parked
- ○ Reversing
- ○ Making Right Turn
- ○ Avoidance
- ○ Lane Change
- ○ Leaving Parking
- ○ Overtaking/Passing
- ○ Parking Position
- ● Making U Turn
- ○ In Tow

### V22. Vehicle Configuration
- ○ Passenger Car
- ● Light Truck
- ○ Stationwagon/Van
- ○ SUV
- ○ Motorcycle
- ○ Other
- ○ RV
- ○ School Bus
- ○ Single-Unit Truck(2)
- ○ Single-Unit Truck(3+)
- ○ Farm Tractor
- ○ Tractor/SemiTrailer
- ○ Tractor(2)
- ○ Tractor(3)
- ○ Truck/Trailer
- ○ Emergency Veh.
- ○ Commercial Bus
- ○ ATV
- ○ Farm Equip.
- ○ Unknown Truck

### V23. Initial Contact / V24. Direction of Travel
- ○ Under
- ○ Overturn
- ○ None
- ○ Other

### V25. Blowout Type
- ● None
- ○ Right only
- ○ Left Only
- ○ Both Sides
- ○ Separate
- ○ Signed

### V26. Traffic Control Device
- ○ Channel-Painted
- ○ Channel-Physical
- ○ Flag Person
- ○ Flashing Signal Red
- ○ Flashing Signal Yellow
- ○ No Passing
- ● None
- ○ Officer
- ○ Stop Bar
- ○ Crossing Guard
- ○ Signal
- ○ Stop Sign
- ○ Const. Flashing Sign
- ○ Yield Sign

V27. Device Functioning? ○ Y ○ N

### V28. Road Character
- ○ Straight/Level
- ○ Intersect two roads
- ○ Straight/Grade
- ○ Curve/Level
- ○ Straight/Hillcrest
- ○ Curve/Grade
- ○ Bridge
- ○ Private Drive
- ○ Curve/Hillcrest
- ○ Crossover
- ○ Begin/End Divided Road
- ○ One-Way

### V29. Road Design
- ● 2 Lane
- ○ 4+
- ○ Parking Lot
- ○ 1 Lane
- ○ 3 Lane
- ○ Off Ramp
- ○ One Way
- ○ Unpaved

V30. Divided? ○ Yes ● No
V31. Center Turn Lane? ○ Yes ○ No

### V32. Road Surface Type
- ● Asphalt
- ○ Concrete
- ○ Dirt
- ○ Gravel
- ○ Other - See Narrative

V33. Towed? ○ Yes ○ No   V34. Authority: ○ Owner ○ Police ○ Other   V35. Towed By:

### Commercial Vehicle

C1. Carrier ID Number:

C2. Authority: ○ US DOT ○ State ○ Mexico / ○ MC ○ Canada

C3. Carrier Name:

C4. Carrier Address:

C5. City    C6. State    C7. Zip Code

C8. GVWR #

### C9. Cargo Body Type
- ○ Auto transporter
- ○ Bus<15
- ○ Bus 15+
- ○ Cargo tank
- ○ Concrete Mixer
- ○ Dump
- ○ None
- ○ Flatbed
- ○ Garbage/refuse
- ○ Grain/chips/gravel
- ○ Other
- ○ Pole/log
- ○ Van/enclosed box
- ○ N/A

NOV 1 9

C10. Commodity Hauled

C11. Placard ID

C12. HAZMAT Released ○ Yes ○ No

HWYSVIUCR07B

**VIUCR Person/Occupant**

VO. Veh # | P2. Person #; | Agency Number | Agency Case Number | Page 0 5 of 0 6

0 2 0 2 | | 1 8 A 0 9 1 6 2 |

**P1. Person Type** ○ Driver ○ Pedestrian ○ Bicyclist ○ Skater ○ Other non-motorist ● Hit and Run Driver ○ LE

P2. License # — V I

P3. State — V I

P4. COL? ○ N ○ Y

P5. DOB (MM/DD/YYYY) / /

P6. First Name — M — Last Name

P7. Address

P8. Phone Number

P9. City — P10. State V I — P11. Zip Code

**P12. DL Status:**
○ Valid ○ Suspended - DUI
○ No License ○ Learner Permit
○ Expired ○ Improper DL
○ Suspended ○ Other

P13. Citation: ○ Y ○ N ○ P — 1 — 2

P14. Citation: 1 — 2

**P16. Non Transport:**
○ Not Transported ○ Police ○ Medic
○ EMS ○ Private Vehicle

P17. EMS Agency Code

P18. Medical Facility Code

**P19. Condition:**
○ No Defects Apparent
○ Unknown
○ Hit and Run
○ Drinking - Not impaired
○ Drinking - impaired
○ Fell Asleep/Fainted/Fatigue
○ Obviously Intoxicated
○ Physical Impairment
○ Affected by Exhaust Fumes
○ Using Drugs - impaired
○ Using Drugs - Not impaired
○ Pending Lab Results

**P20. Non-Motorist Action:**
○ Unknown
○ Entering/Crossing Roadway
○ Walking/running/playing/cycling
○ Working
○ Pushing vehicle
○ Approaching/leaving vehicle
○ Playing/working on vehicle
○ Standing

**P21. Contributing Circumstances (3):**
☐ No Apparent Improper Driving
☐ Failed to Yield Right of Way
☐ Failed to Maintain Safe Distance
☐ Speed Too Fast For Conditions
☐ Driving Under The Influence
☐ Animal on Roadway
☐ Faulty Equipment
☐ Exceeded Lawful Speed
☒ Improper Passing/Overtaking
☐ Made Improper Turn
☐ Right of Center
☐ Failure to keep proper lane/Run off road
☐ Avoidance
☐ Drove on Wrong Side of Road
☐ Fatigued/Asleep
☐ Illegally Crossing Median
☐ Improper Lane Change
☐ Lying and/or Illegally in roadway
☐ Not Visible (Dark Clothing)
☐ Operating Defective Equipment
☐ Passed Stop Sign
☐ Pedestrian Actions
☐ Ran Red Light
☐ Roadway Defects
☐ Visibility Obstructed
☐ Improper Reversing
☐ See Crash Description

**Safety Equip (2):**
☐ Shoulder & Lap Belt
☐ None
☐ Lap Belt
☐ Automated Restraint
☐ Shoulder Belt
☐ Child Safety Seat
☐ Helmet

**P24. Injury Type:**
○ None
○ Complaint of Pain
○ Moderate
○ Life Threatening
○ Killed
○ Not
○ Partially
○ Totally

**P25.** Extricated ○ N ○ Y

**P26. Sex:** ○ M ○ F

**P27. Race:** ○ White ○ Hispanic ○ Black ○ Other

**P28. Position:** ○ Left ○ Center ○ Right

**P29. Airbag:**
○ Deployed - Front ○ Not Deployed
○ Deployed - Side ○ No Airbag
○ Deployed - Both

**P30. Type:**
☐ None ☐ Serum
☐ Blood ☐ Urine
☐ Breath ☐ SFST's

**P31. Status:**
☐ None given ☐ Test given
☐ Test refused ☐ Test given, pending
☐ Arrested

**P32.**

**Drug Test Information**

**P33. Type:** ○ None ○ Serum ○ Blood ○ Urine

**P34. Status:** ○ None given ○ Test given, pending ○ Test refused ○ Test given

---

**Occupant**

O0. Vehicle #: | O1. First Name | M | Last Name

O2. Address Same as Driver #

O3. Address

O4. City | O5. State — Unborn Child ☐

**O6. Position:**
○ Front-Driver ○ 3rd-middle
○ Front-Middle ○ 3rd-right
○ Front-right ○ Sleeper of Truck Cab
○ 2nd-left ○ Encl. Pass./Cargo Area
○ 2nd-middle ○ Unencl. Pass./Cargo Area
○ 2nd-right ○ Riding on Exterior
○ 3rd-left ○ Towed Vhcl./Trailer

**O7A. Safety Equip (2):**
☐ Shoulder and Lap Belt
☐ None
☐ Lap Belt
☐ Automated Restraint
☐ Shoulder Belt
☐ Child Safety Seat
☐ Helmet

**O8. Sex:** ○ M ○ F

**O9. Race:** ○ White ○ Hispanic ○ Black ○ Other

**O10. Age:**

**O11. Extricated:** ○ M ○ N ○ Y ○ Y

**O12. Ejection:** ○ Not ○ Partially ○ Totally

**O13. Injury Type:**
○ None ○ Life Threatening
○ Complaint of Pain
○ Moderate ○ Killed

**O14. Airbag:**
○ Deployed - Front ○ Not Deployed
○ Deployed - Side ○ No Airbag
○ Deployed - Both

**O15. Non Transport:** ○ Not Transported ○ Police ○ Medic ○ EMS ○ Private Vehicle

O16. EMS Agency Code

O17. Medical Facility Code

---

**Occupant**

O0. Vehicle #: | O1. First Name | M | Last Name

O2. Address Same as Driver #

O3. Address

O4. City | O5. State — Unborn Child ☐

**O6. Position:**
○ Front-Driver ○ 3rd-middle
○ Front-Middle ○ 3rd-right
○ Front-right ○ Sleeper of Truck Cab
○ 2nd-left ○ Encl. Pass./Cargo Area
○ 2nd-middle ○ Unencl. Pass./Cargo Area
○ 2nd-right ○ Riding on Exterior
○ 3rd-left ○ Towed Vhcl./Trailer

**O7A. Safety Equip (2):**
☐ Shoulder and Lap Belt
☐ None
☐ Lap Belt
☐ Automated Restraint
☐ Shoulder Belt
☐ Child Safety Seat
☐ Helmet

**O8. Sex:** ○ M ○ F

**O9. Race:** ○ White ○ Hispanic ○ Black ○ Other

**O10. Age:**

**O11. Extricated:** ○ M ○ N ○ Y ○ Y

**O12. Ejection:** ○ Not ○ Partially ○ Totally

**O13. Injury Type:**
○ None ○ Life Threatening
○ Complaint of Pain
○ Moderate ○ Killed

**O14. Airbag:**
○ Deployed - Front ○ Not Deployed
○ Deployed - Side ○ No Airbag
○ Deployed - Both

**O15. Non Transport:** ○ Not Transported ○ Police ○ Medic ○ EMS ○ Private Vehicle

O16. EMS Agency Code

O17. Medical Facility Code

HWYSVIUCR07A

| VIUCR Vehicle | V0. Vehicle #: V1. Total Occupants | Agency Number | Agency Case Number |
|---|---|---|---|

**VIUCR Vehicle** — V0. Vehicle #: `0 2`  V1. Total Occupants `0 1`  — Agency Case Number `1 8 A 0 9 1 6 2`   Page `0 6` of `0 6`

V2. State `F L`   V3. Year `2 0 1 B`   V4. License Plate Number `B Q S - X 3 3`

**Owner Information**

V5. Make `J E E P`

V6. Model Year `WHIT`

V7. Vehicle Model `L I B E R T Y`

V8. Vehicle Color `W H I T`

☐ Same as Driver

V12. Owner Name: ODERECHT CONTRUCTION INC.

V13. Address: 3201 GRIFFIN RD 3RDS FLOOR

V14. City: DANIA BEACH    V15. State `F L`    V16. Zip Code `33312`

V9. Damage: ● Heavy  ○ Light  ○ None

V10. Speed Zone V11. Est. Speed

V17. Insurance Company Name

V18. Policy Number

V36. VIN `2 F M D R 3 G C 4 D B A 7 9 2 7 9`

V19. No Proof of Insurance ☒

**V20. Sequence of Events**

Collision w/ Person, Vehicle/Non-fixed Object
- 2 | 4 | (○○○) Animal
- (○○○) Bicyclist
- (○○○) Maintenance Equip.
- (○○○) Moving Vehicle
- (○○○) Parked Vehicle
- (○○○) Pedestrian
- (○○○) Slowing Vehicle
- (○○○) Stopped Vehicle In Road

Non-Collision
- 2 | 4 | ○○ Cargo Loss/Shift
- ○○ Crossover
- ○○ Equipment Failure
- ○○ Fell/Jump from Vehicle
- ○○ Fire/Explosion
- ○○ Immersion
- ○○ Jackknife
- ○○ Median/Centerline
- ○○ Thrown/Falling Object
- ○○ Off roadway/Left
- ○○ Off roadway/Right
- ○○ Overturn/Rollover
- ○○ Unit Separation
- ○○ Over Correcting/Steering

Collision w/ Fixed Object
- 2 | 4 | ○○ Attenuator/Cushion
- ○○ Bridge Structure
- ○○ Culvert
- ○○ Curb
- ○○ Ditch
- ○○ Embankment
- ○○ Fence
- ○○ Guardrail
- ○○ Mailbox
- ○○ Median Barrier
- ○○ Post/Pole/Support
- ○○ Tree
- ○○ Other Fixed Object

**V21. Vehicle Action**
- ○ Going Straight
- ○ Avoidance
- ○ Making Left Turn
- ○ Lane Change
- ○ Stopped
- ○ Leaving Parking
- ○ Slow/Stop in Road
- ○ Overtaking/Passing
- ○ Parked
- ○ Parking Position
- ○ Reversing
- ● Making U Turn
- ○ Making Right Turn
- ○ In Tow

**V22. Vehicle Configuration**
- ○ Passenger Car
- ○ School Bus
- ○ Truck/Trailer
- ○ Light Truck
- ○ Single-Unit Truck(2)
- ○ Emergency Veh.
- ○ Stationwagon/Van
- ○ Single-Unit Truck(3+)
- ○ Commercial Bus
- ● SUV
- ○ Farm Tractor
- ○ ATV
- ○ Motorcycle
- ○ Tractor/SemiTrailer
- ○ Farm Equip.
- ○ Other
- ○ Tractor(2)
- ○ Unknown Truck
- ○ RV
- ○ Tractor(3)

**V23. Initial Contact**

**V24. Directional of Travel**

**V25. Bilateral Type**
- ● None
- ○ Right only
- ○ Left Only
- ○ Both Sides
- ○ Separate
- ○ Signed

○ Under  ○ Overturn  ○ None  ○ Other

**V26. Traffic Control Device**
- ○ Channel-Painted
- ○ Officer
- ○ Channel-Physical
- ○ Stop Bar
- ○ Flag Person
- ○ Crossing Guard
- ○ Flashing Signal Red
- ○ Signal
- ○ Flashing Signal Yellow
- ● Stop Sign
- ○ No Passing
- ○ Const. Flashing Sign
- ○ None
- ○ Yield Sign

V27. Device Functioning? ● Y  ○ N

**V28. Road Character**
- ○ Straight/Level
- ○ Bridge
- ○ Intersect two roads
- ○ Private Drive
- ○ Straight/Grade
- ○ Curve/Hillcrest
- ○ Curve/Level
- ○ Crossover
- ○ Straight/Hillcrest
- ○ Begin/End Divided Road
- ○ Curve/Grade
- ○ One-Way

**V29. Road Dscrimn**
- ○ 2 Lane
- ○ 3 Lane
- ○ 4+
- ○ Off Ramp
- ○ Parking Lot
- ○ One Way
- ○ 1 Lane
- ○ Unpaved

V30. Divided? ○ Yes  ○ No

V31. Center Turn Lane? ○ Yes  ○ No

**V32. Road Surface Type**
- ● Asphalt
- ○ Concrete
- ○ Dirt
- ○ Gravel
- ○ Other - See Narrative

V33. Towed? ○ Yes  ○ No    V34. Authority: ○ Owner  ○ Police  ○ Other    V35. Towed By:

**Commercial Vehicle**

C1. Carrier ID Number:

C2. Authority: ○ US DOT  ○ MC  ○ State  ○ Canada  ○ Mexico

C3. Carrier Name

C4. Carrier Address

C5. City    C6. State    C7. Zip Code

C8. GVWR #

**C9. Cargo Body Type**
- ○ Auto transporter
- ○ Bus<15
- ○ Bus 15+
- ○ Cargo tank
- ○ Concrete Mixer
- ○ Dump
- ○ None
- ○ Flatbed
- ○ Garbage/refuse
- ○ Grain/chips/gravel
- ○ Other
- ○ Pole/log
- ○ Van/enclosed box
- ○ N/A

C10. Commodity Hauled

C11. Placard ID

C12. HAZMAT Released ○ Yes  ○ No

HWYSVIUCR07B

Government of the Virgin Islands of the United States        Page 1 of 1
Description of Collision        CR: 18A09162

On November 1, 2018, at approximately 01:39 a.m., my partner Det. S. Lake, and I were dispatched by the 911 call center in reference to a reported auto accident in the vicinity of the Cool Out Bar, Christiansted.

Upon my arrival I made contact with D1(Kevongh Grant), who was in the process of receiving medical attention and was unable to provide a statement. D1 was transported to the Juan F. Luis Hospital for further treatment.

Within V2 (BQS-X33) I observed the APTIM identification cards of Mr. Nathan McCann and Mr. Andrew McCann. Neither individual was located at the scene. No insurance or registration information could be found within V2.

Dylan Isner was present near the intersection at the time of the collision. Mr. Isner was advised of his Miranda Rights and interviewed. Mr. Isner stated that he was a passenger in a vehicle traveling south on Hope Road when he observed V2 overtake him and travel into the intersection at a high rate of speed, colliding with V1 (CFC-668), thereby causing an accident.

At the Juan F. Luis Hospital I made contact with Dr. T. Merchant who stated that D1 had suffered a broken right arm as well as lacerations to his legs and arms. I made contact with D1, who stated that he was unable to remember the events of the accident.

On November 16, 2018, at the Wilbur Francis Command, I made contact with Darion Grainger, a Supervisor at APTIM, a company listed on the work identification cards found within V2. I provided Mr. Grainger with photographs of the identification cards to which he stated that he recognized the individuals as contractors. Mr. Grainger agreed to turn over information regarding Mr. N. McCann and Mr. A. McCann.

MY INVESTIGATION OF THIS COLLISION REVEALED THE FOLLOWING FACTS:

V1 received damages about the body of the vehicle to include the hood, front glass, cabin roof, driver and passenger side doors, tailgate and trunk.

V2 received damages to the front bumper, engine, driver and passenger side front wheel well and driver side front door. A check of V2's license plate revealed that V2's tag number is registered with Odedrecht Construction Inc. No insurance information was present.

Based on evidence observed on the scene, both vehicles collided at the intersection of Pearl Road and Hope Road.

Impact marks were observed in the south western section of the intersection in the vicinity of the crosswalk. In the vicinity of the intersection I observed a stop sign on the shoulder of the southbound lane indicating that V1 had the right of way.

Based on records provided by Mr. Grainger, Mr. N. McCann and Mr. A. McCann were identified as being employed with Campbell Development. Further investigation determined that both Mr. N. McCann and Mr. A. McCann departed from the island of St. Croix on November 2, 2018 and travelled to Houston, Texas.

Based on the limited information I cannot determine which of the two individuals was operating V2 at the time of the incident.

**Government of the Virgin Islands of the United States**
**Description of Collision**

Page 2 of 2
CR: 18A09162

Based on my findings I request this case remain open pending issuing of citations to for Failure to Yield Right of Way Thereby Causing an Accident, Leaving the Scene of an Accident After Causing Personal Injury, Operating without Proof of Insurance and Operating Without Proof of Registration to D2 or other responsible parties.

*Rashid Iles* /s/

Detective Rashid Iles
PDN# 3277

NOV 19 2018